Neil MORRISON, Appellee,

v.

Irwin I. KIMMELMAN, Attorney General of New Jersey and John J. Rafferty, Superintendent, Rahway State Prison, Appellants.

No. 84–5138.

United States Court of Appeals, Third Circuit.

Argued Oct. 30, 1984.

Decided Jan. 18, 1985.

Irwin I. Kimmelman, Atty. Gen. of New Jersey, Arlene R. Weiss (Argued), Deputy Atty. Gen., Div. of Criminal Justice, Appellate Section, Trenton, N.J., for appellants.

William E. Staehle (Argued), Bozonelis, Staehle & Woodward, Chatham, N.J., for appellee.

Before GARTH and SLOVITER, Circuit Judges and LORD, District Judge.*

**OPINION OF THE COURT**

JOSEPH S. LORD, III, District Judge, sitting by designation.

### I.

#### Introduction

This appeal from an order of the district court granting petitioner's habeas corpus petition presents three issues. First, does the rule of *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), barring collateral review of a Fourth Amendment claim preclude our consideration of petitioner's Sixth Amendment claim that he was denied effective assistance of counsel? Second, if we may review petitioner's claim, did his "counsel's representation fall below an objective standard of reasonableness", *Strickland v. Washington*, —— U.S. ——, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984)? Third, if so, did the ineffectiveness prejudice defendant under the standard set forth in *Strickland v. Washington, supra*, 104 S.Ct. at 2068?

### II.

#### Facts

In March, 1979, petitioner was convicted in a bench trial in a New Jersey state court of carnal abuse, forcible rape, impairing the morals of a child, and private lewdness in connection with his alleged rape of his fifteen year old employe. During the course of petitioner's trial, the state offered into evidence a sheet which Detective Delores Most testified she had seized from petitioner's bed shortly after the rape allegedly occurred in petitioner's apartment. The search and seizure were non-consensual and warrantless. Police lab technicians later testified that stains on the bed sheet were positive for sperm from a man with petitioner's blood type and that hairs recovered from the sheet were similar to the head hair of both the petitioner and the victim.

Because defense counsel failed to conduct any discovery, he was unaware that the state was in possession of the sheet. He therefore failed to make a timely motion to suppress the evidence before the trial, as required by New Jersey Court Rule 3:5–7(a). When defense counsel moved to suppress during Detective Most's testimony, the trial judge stated that under the state court rules he could no longer entertain the motion. The trial judge also noted that there would have been "a very valid basis for suppression" if the motion had been made in a timely manner. In addition, he reprimanded defense counsel for failing to conduct discovery which would have alerted him to the fact that the state was in possession of petitioner's sheet.

Following his conviction, petitioner unsuccessfully exhausted state remedies. *See Morrison v. Kimmelman*, 579 F.Supp. 796, 800 (D.N.J.1984). This petition for habeas corpus followed. The district judge properly determined that he was precluded from reviewing petitioner's Fourth Amendment claim under the doctrine of *Stone v. Powell, supra. Morrison v. Kimmelman, supra,* at 802. However, the district court did consider petitioner's Sixth Amendment claim and found that "based on the unmitigated negligence of petitioner's trial counsel in failing to conduct any discovery, combined with the likelihood of success of a suppression motion had it been timely made," petitioner was deprived of effective assistance of counsel. *Id.* at 802–03. The court also determined that this deprivation constituted error that was not harmless beyond a reasonable doubt. *Id.* at 804. The district court ordered that the writ would issue unless the state retried Morri-

* Hon. Joseph S. Lord, III, Chief Judge Emeritus, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

son within 90 (ninety) days. This order, however, was stayed by the district court pending determination of this appeal.

## III.

### Discussion

#### A.

■ The district judge was undoubtedly correct in deciding that *Stone v. Powell* precludes federal court review of petitioner's Fourth Amendment exclusionary claim. That case held that "where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." 428 U.S. at 494, 96 S.Ct. at 3052. Petitioner in this case does not argue that New Jersey denied him a full and fair opportunity to litigate his claim. Rather, he argues that his counsel's ineffectiveness prevented him from taking advantage of the opportunity provided under New Jersey's court rules. Since the state did provide an opportunity for full litigation of the Fourth Amendment claim, under *Stone* the district court and this court are now precluded from reviewing the legality of the search under the Fourth Amendment. We must decide here whether that bar also extends to petitioner's Sixth Amendment claim because our consideration of it must touch on the merits of petitioner's Fourth Amendment claim.

Other courts have wrestled with this troublesome issue. In *LiPuma v. Commissioner*, 560 F.2d 84 (2d Cir.1977), *cert. denied*, 434 U.S. 861, 98 S.Ct. 189, 54 L.Ed.2d 135 (1978), the Second Circuit held that counsel's failure to file a suppression motion before trial did not constitute ineffective assistance of counsel. *Id.* at 93. In dictum the court stated: "The fact that petitioner's claim is ostensibly grounded on the Sixth, rather than the Fourth, Amendment does not negate *Stone's* applicability, because at the heart of the case lies an alleged Fourth Amendment violation." *Id.* at 93 n. 6. The Fourth Circuit reached the opposite conclusion in *Sallie v. State of North Carolina*, 587 F.2d 636 (4th Cir. 1978), *cert. denied*, 441 U.S. 911, 99 S.Ct. 2009, 60 L.Ed.2d 383 (1979), in which it ruled "... we do not read [*Stone*] to say that issuance of a writ of habeas corpus on sixth amendment grounds is barred if a defense attorney fails to object to the admission of evidence obtained in clear violation of the fourth amendment." *Id.* at 640.

The court in *Toliver v. Wyrick*, 469 F.Supp. 583 (W.D.Mo.1979) stated that if it had been called upon to decide whether to extend *Stone* to a Sixth Amendment violation, it would have refused to do so. *Id.* at 604 n. 32. The court determined that *Stone* did not apply to a violation of the *Miranda* rules. *Id.* at 604. And in *Moran v. Morris*, 478 F.Supp. 145 (C.D.Ca.1979), vacated on other grounds, 665 F.2d 900 (9th Cir.1981), the court was careful to differentiate between the rationale for granting relief under the exclusionary rule for a Fourth Amendment claim and the purpose of granting relief for a Sixth Amendment violation when counsel failed to raise a Fourth Amendment claim. The court concluded that *Stone* should not be extended to include Sixth Amendment claims. *Id.* at 151–52.

We are persuaded that absent a clear mandate from the Supreme Court, *Stone v. Powell* should not be extended to bar consideration of Sixth Amendment issues based on counsel's alleged failure to advance Fourth Amendment claims. We rely on the language of *Stone* itself and on our analysis of the differences between Fourth and Sixth Amendment claims.

In the majority opinion in *Stone*, Justice Powell painstakingly examined the history and purpose of the exclusionary rule. He noted, for example, that "although the rule is thought to deter unlawful police activity in part through the nurturing of respect for Fourth Amendment values, if applied indiscriminately it may well have the opposite effect of generating disrespect for the law and administration of justice." *Id.* 428 U.S. at 491, 96 S.Ct. at 3051. He then

explained that the Court's decision in *Stone* springs from the pragmatic conclusion that on federal habeas corpus review, "the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force." *Id.* at 494–95, 96 S.Ct. at 3052–53. Most significantly for our purposes here, in response to the dissent's alarmed characterization of the decision as the prelude to a "drastic withdrawal of federal habeas jurisdiction," *id.* at 517, 96 S.Ct. at 3063. Justice Powell emphasized the limited nature of the decision:

> Our decision today is *not* concerned with the scope of the habeas corpus statute as authority for litigating constitutional claims generally. We do reaffirm that the exclusionary rule is a judicially created remedy rather than a personal constitutional right .... In sum, we hold only that a federal court need not apply the exclusionary rule on habeas review of a Fourth Amendment claim absent a showing that the state prisoner was denied an opportunity for a full and fair litigation of that claim at trial and on direct review. Our decision does not mean that the federal court lacks jurisdiction over such a claim, but only that the application of the rule is limited to cases in which there has been both such a showing and a Fourth Amendment violation.

*Id.* at 494 n. 37, 96 S.Ct. at 3052–53 n. 37. Certainly, this language cannot be read as a license to expand freely the decision of the Court to include other types of constitutional claims.

The Sixth Amendment, which appellants would have us include under the bar of *Stone*, implicates an entirely different set of concerns than does the exclusionary rule. As Justice Powell notes, the exclusionary rule, although it arises out of a constitutional right, is merely a judicially created doctrine. The Sixth Amendment, however, is an essential component of our constitutional system. The exclusionary rule was created to deter police officers from engaging in illegal searches and seizures. Its application frequently affected the truth finding process adversely by excluding relevant, trustworthy and probative evidence. The rule had no bearing on the integrity of the trial. The Sixth Amendment, on the other hand, was adopted to safeguard the trial and the integrity of the fact-finding process and the fundamental rights of defendants. If we err in construing *Stone* too narrowly, we will be burdening the federal courts with the duty of deciding issues in petitions for habeas corpus which the Supreme Court has concluded could be satisfactorily left to the state courts. But if we err in construing *Stone* too broadly, we will do more than inconvenience criminal defendants. We will in fact impinge upon one of their most basic constitutional rights. Indeed, we would be curtailing—without Supreme Court authority—a right which the Court itself has continued to expand. *Cf. Betts v. Brady,* 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942) (counsel guaranteed only in capital cases) with *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (right of indigents to appointed counsel in all felony cases); *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (right to counsel at or after the initiation of adversarial proceedings); *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) (right to appointed counsel in misdemeanor prosecutions when jail sentences are imposed); *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (right to appointed counsel on appeal).

The exclusionary rule is simply a judicially created chastisement to deter police misconduct. The right to effective assistance of counsel, however, is firmly embedded in the Constitution to protect defendants, assure a fair trial, and further the search for truth. *Stone* is the culmination of years of justified questioning of and speculation about the efficacy,—not of the Fourth Amendment,—but of the exclusionary rule. On the other hand, there has never been any doubt of the absolute necessity of effective counsel.

The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the "ample opportunity to meet the case of the prosecution" to which they are entitled.... An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair.

*Strickland v. Washington, supra,* 104 S.Ct. at 2063.

We are convinced that an extension of *Stone* to the case before us would be unwarranted in light of the Court's own refusal to broaden *Stone's* effect without careful consideration. In *Brewer v. Williams, supra,* the Court refused to consider whether the rationale of *Stone* should be extended to certain Fifth and Sixth Amendment claims even though the question had been raised during the oral argument of that case. Justice Powell noted in his concurring opinion:

> That question has not been presented in the briefs or arguments submitted to us, and we therefore have no occasion to consider the possible applicability of *Stone* ... [That] is a question as to which I intimate no view, and which should be resolved only after the implications of such a ruling have been fully explored.

*Id.,* 430 U.S. at 414, 97 S.Ct. at 1247. In *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Court noted but did not consider the possible application of *Stone* to an alleged *Miranda* violation when there had been a full and fair opportunity to raise the argument in state proceedings. *Id.* at 87 n. 11, 97 S.Ct. at 2506 n. 11. Instead, the Court chose to resolve *Wainwright* on other grounds. *Id.*

### B.

■ We hold that *Stone v. Powell* does not bar federal examination of peti-

tioner's Sixth Amendment claim. Our inquiry, then, must ask whether: (1) "counsel's representation fell below an objective standard of reasonableness", *Strickland v. Washington,* 104 S.Ct. at 2065;[1] and (2) whether, "but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* 104 S.Ct. at 2068. The district judge concluded that counsel was grossly ineffective. We have no difficulty in reaching this same conclusion.

The second inquiry must be a two step process. First, whether, if counsel had conformed to proper norms of advocacy and had timely moved to suppress, the state court would have granted or denied the motion, a determination which we would be foreclosed from examining. This step is necessary because obviously if the state courts would have denied the motion, counsel's inadequacy would have been immaterial and could not have affected the outcome of the case. Here again, the conclusion is not difficult to reach. The state trial judge, who would have heard the motion, stated that there was "a very valid basis for suppression" and the district judge concluded that there was a "likelihood of success of a suppression motion." We cannot disagree.

The second step of the inquiry mandated by *Strickland v. Washington,* requires us to address the issue whether, if the bed sheet had not been in evidence, there is a reasonable probability that the result would have been different. 104 S.Ct. at 2068.

Because the district court filed its opinion in this case before the Supreme Court decided *Strickland,* it relied on the standard for determining prejudice because of ineffective assistance of counsel enunciated in *Moore v. United States,* 432 F.2d 730 (3d Cir.1970), followed in *U.S. v. Baynes,* 687 F.2d 659 (3d Cir.1982). In *Baynes,* we held that petitioner need only demonstrate that the prejudice he suffered as a result of his

---

1. This criterion as stated by the Supreme Court is substantially that of this Circuit as expressed in *Moore v. United States,* 432 F.2d 730 (3d Cir.1970), and applied by the district judge.

counsel's ineffective assistance was not harmless beyond a reasonable doubt. We explained that standard by stating that "when a conviction is tainted by ineffective assistance ... a court should expect the habeas petitioner to demonstrate that there is a 'reasonable possibility' that had the error of which he complains not occurred, the jury might have arrived at a different outcome." *Id.* at 670–71. Because the district judge decided that petitioner satisfied his burden under this standard, he granted the writ. *Morrison v. Kimmelman, supra,* 579 F.Supp. at 804. Thus, the standard applied by the district judge, while correct at the time, is no longer valid.

 The issue of whether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. *Strickland v. Washington,* 104 S.Ct. at 2070. We are therefore not bound by the clearly erroneous rule and we may freely review the district court's conclusion. *United States ex rel. Johnson v. Johnson,* 531 F.2d 169, 174 n. 12 (3d Cir.), *cert. denied,* 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976). We may, however, also remand to the district court for a determination of this issue. We hold that remand is the proper procedure in this case. Judge Stern's analysis of this case is in error only because the Supreme Court announced a new standard after he filed his opinion. Because of this intervening circumstance, it is appropriate to allow the district judge an opportunity to review petitioner's Sixth Amendment claim under the new standard announced in *Strickland.*[2]

The judgment of the district court will be vacated, and the case remanded for further proceedings consistent with this opinion.

---

**2.** The State of New Jersey has argued that introduction of the laboratory analysis of the bedsheet was not prejudicial to the petitioner because the evidence of seminal stains was consistent with his testimony that he had engaged in sexual intercourse on the sheet with another woman prior to the date of the alleged rape, and the evidence of head hairs similar to the victim's is consistent with her conceded presence in petitioner's apartment. The State stresses that the state court judge remarked at the bail motion hearing that "the sheet was just one small phase in this whole case." Aa33. This statement is not a finding to which a presumption of correctness must be accorded under 28 U.S.C. § 2254(d). Because we are remanding the issue to the district court for determination, we express no opinion on the State's argument as to the prejudice *vel non* of the evidence relating to the bedsheet.