**UNITED STATES of America ex rel. John SHIFLET, Plaintiff,**

v.

**Michael LANE, Director, Illinois Department of Corrections, and James Thieret, Warden, Menard Illinois Correctional Center, Defendants.**

No. 85 C 5243.

United States District Court, N.D. Illinois, E.D.

Dec. 31, 1985.

*States v. Poe, supra.* Thus, an evidentiary hearing on these three issues was not necessary.

Josette Skelnik, Robinson & Skelnik, Elgin, Ill., for plaintiff.

Terence M. Madsen, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Petitioner John Shiflet ("Shiflet") was convicted for the murder of his wife and is now serving a term of life imprisonment following a jury trial in an Illinois state court. The appellate court affirmed his conviction, *People v. Shiflet*, 125 Ill.App.3d 161, 80 Ill.Dec. 596, 465 N.E.2d 942 (2d Dist.1984), and after being denied leave to appeal to the Illinois Supreme Court, Shiflet petitioned this Court under 28 U.S.C. § 2254 (1982) for a writ of habeas corpus. Shiflet claims that the use of privileged information to obtain a search warrant and the admission of evidence seized as a result of the warrant violated his Sixth and Fourteenth Amendment rights to the effective assistance of counsel and a fair trial. Respondents ("the State") have filed a motion for summary judgment, and Shiflet has filed a cross-motion for summary judgment. For the following reasons, the Court allows the petitioner's motion and grants the petition for habeas corpus. Accordingly, the State's motion for summary judgment is denied.

**1.** Only facts relevant to the habeas corpus petition are summarized here. These facts are drawn largely from a Proposed Statement of Agreed Facts submitted by the parties. Additional facts can be obtained from the state court record and the state appellate court opinion.

## FACTUAL BACKGROUND [1]

On or about September 30, 1980,[2] petitioner's wife Rose Shiflet ("Rose") was murdered. Rose's body was found early on October 1 along a road approximately three miles from the apartment which she shared with Shiflet. The cause of death was a blow to the head, resulting in extensive bleeding and a consequential loss of oxygen supply to the brain. Shiflet had reported Rose missing on the night of September 30, claiming that she had left the apartment in an anxious state resulting from a personal problem which the two of them had been discussing.

On October 1, Shiflet engaged legal counsel in anticipation that he would be a primary suspect in the investigation of his wife's murder. He went to Charles Kaeding ("Kaeding") who agreed to represent him and referred him to John Ylisela ("Ylisela"), a private investigator who often worked for Kaeding and shared office space with him. Attorney Kaeding instructed Ylisela to interview Shiflet and told Shiflet to give Ylisela his full cooperation in divulging the details of the matter for which petitioner was seeking legal advice. At no time did Shiflet consult any other persons regarding his problem, nor did he waive his privilege of confidential communication with his attorney.

That same evening, Ylisela contacted Paul Dungan ("Dungan") of the DuPage County Sheriff's Office, whom he had known for six to eight years when they had been fellow police officers. Ylisela explained that he had important information regarding Rose's death. Dungan and Ylisela met secretly in a parking lot, where Ylisela related to Dungan that Shiflet had killed his wife. Ylisela related in narrative form to Dungan his understanding of how Shiflet had killed his wife and disposed of

*People v. Shiflet*, 125 Ill.App.3d 161, 80 Ill.Dec. 596, 465 N.E.2d 942 (2d Dist.1984).

**2.** All dates discussed hereafter in this opinion refer to incidents taking place in 1980 unless otherwise stated.

her body. Despite several inquiries by Dungan, Ylisela refused to disclose the source of his knowledge and claimed he would deny having ever spoken to Dungan if he were asked. Ylisela warned Dungan that "You don't want to know" the source of the information.

Following this conversation, Dungan falsely informed Sergeant George Weihofen ("Weihofen") that an *unknown* informant had provided him with the details of the murder which he actually had learned from Ylisela. Dungan then prepared a police report indicating that he had spoken to an unknown male who would not reveal his identity and whom Dungan had never before seen. His superiors later ordered him to file a second report disclosing the identity of the informant.[3]

Dungan had conversed with Ylisela on two prior occasions earlier that year when they discussed Ylisela's employment. Ylisela told Dungan that he was an investigator for Hargrave Secret Service, and that he was renting a suite from Charles Kaeding. Further, the record indicates that Dungan knew Kaeding was Shiflet's lawyer because on October 1 Dungan saw Kaeding at Shiflet's apartment. Therefore, Dungan actually was well acquainted with Ylisela and was apparently aware that Ylisela shared office space with Shiflet's attorney when he related the information to his sergeant. Respondents' Proposed Statement of Agreed Facts at 5, 8.

Ylisela was summoned to the Sheriff's Office on October 2, 1980. He admitted knowing some members of the police department but denied having given them any information. Although the record does not indicate on what basis Ylisela was requested to come in, it is clear from this incident that the law enforcement officials were concerned that something was wrong. This was confirmed at the very latest on the morning of October 3, when a local attorney apparently affiliated with Kaeding called an assistant state's attorney and advised him not to question Ylisela on any matter relating to the investigation of Rose's homicide, warning him that it would be a breach of the attorney-client privilege. The state's attorney informed Dungan of this conversation, yet Dungan proceeded to procure a search warrant based in substance on the Ylisela information despite this warning. He did include a statement at the end of his complaint for the search warrant disclosing the fact that this warning regarding Ylisela and the attorney-client privilege breach had taken place.

At this point, one search warrant had already been executed authorizing a search of the apartment which Shiflet and Rose shared. The apartment was searched under the authority of this warrant on October 1 at 5:45 p.m., before the Ylisela-Dungan meeting, and a damp pair of jeans and shirt were seized. On the morning of October 2, police officers searched Rose's car pursuant to another search warrant and seized several items, including a hatchet handle and tarp. After chemical testing, the items taken from the car were found to have traces of blood on them.

However, many important items of evidence were not found until the police searched the Shiflet apartment for a second time on the evening of October 3. Dungan obtained a search warrant authorizing this second search primarily based on information obtained from Ylisela. The police, knowing exactly what to look for based on the information Ylisela disclosed, seized physical evidence strongly linking Shiflet to the crime.[4]

The affidavit provided by Dungan as a basis for this warrant outlined the privileged information received from Ylisela. Ylisela told Dungan that Shiflet had murdered his wife at their apartment on Sep-

---

**3.** It is unclear how Dungan's superiors knew that he was lying in the first report.

**4.** The evidence obtained through this search included: a section of carpeting and carpet padding which were determined to have blood stains; a hair dryer bearing a blood stain; a vacuum cleaner bag and its contents, including fingernail clippings; a hammer to which were adhered two hairs and on which positive signs of blood were detected.

tember 30, 1980. He told Dungan all of the details of the crime, including facts regarding the victim's bleeding and Shiflet's extensive efforts to clean all traces of blood from the apartment. To a great extent, this information provided police with the knowledge necessary to identify specific items as relevant to the murder investigation during the search on October 3.[5]

Before trial, Shiflet moved unsuccessfully to have the evidence obtained in the October 3 search suppressed on the basis of violations of his Sixth Amendment right to effective assistance of counsel.[6] The trial court denied the motion since there was no affirmative invasion of the attorney-client privilege by the state, in that there was an insufficient showing that the police knew, or should have known, "that there was taking place some process that was or constituted invasion of the attorney-client procedure."[7] The court also found that there was sufficient information in the affidavit to support probable cause to search the apartment for a second time, although it did not indicate that there would have been probable cause without Ylisela's statements.

Shiflet also filed a motion *in limine* to prevent the state from using statements made by him to Ylisela at trial in violation of Shiflet's privilege and to preclude use of the physical evidence seized in the search pursuant to the Ylisela-based warrant. The court agreed to prohibit introduction of Ylisela's statements, but again decided the physical evidence was admissible. In its ruling, the court made explicit findings that the attorney-client privilege had not been waived, that there was insufficient evidence to support any claim that the statements made to Ylisela by Shiflet were not privileged because they fell within the crime-fraud exception to the attorney-client privilege and there was no affirmative invasion of the attorney-client privilege by any state official.[8]

Shiflet was tried and convicted by a jury in an Illinois state court. The court sentenced him to imprisonment for the remainder of his natural life, and both the sentence and conviction were affirmed on appeal. The appellate court found that the communications between Shiflet and his attorney or his attorney's investigator were privileged and affirmed the lower court ruling that the crime-fraud exception did not apply. However, the court also agreed that since the State was not affirmatively

---

**5.** For example, it was learned that Shiflet struck his wife over the head with a hammer, which had a new handle. The victim struggled, scratching Shiflet's arm and chest, after which Shiflet strangled her. He then covered her head with a plastic bag. Shiflet cleaned blood stains from the carpet and then used a hair dryer to blow dry the surface. He then clipped and cleaned the victim's fingernails. The hammer handle, sections of the carpet, fingernail clippings and the hair dryer were all found in the October 3 search.

**6.** The Sixth Amendment right to counsel in the Constitution is extended to individuals tried in the state courts through the Fourteenth Amendment by incorporation. *Gideon v. Wainwright,* 372 U.S. 335, 342, 83 S.Ct. 792, 795, 9 L.Ed.2d 799 (1963). Where we refer in this opinion to petitioner's Sixth Amendment rights, it should be recognized at all times that this principle is being invoked.

**7.** Respondent's Proposed Statement of Agreed Facts at 10. We note that an important distinction must be made between the state court's finding and our holding today. In denying the motion to suppress, the state court finding that there was no affirmative invasion of the attorney-client privilege by the State refers to the plans or intent of governmental officials to obtain information from a privileged source. The trial judge stated that "[i]nvasion I think by its very terms, its very nature, connotes if it doesn't denote that there must be some affirmative undertaking by the invaders." (C. 952). We do not and indeed could not, disturb the finding of fact that there was insufficient evidence to indicate that the government planned to intrude on petitioner's attorney-client privilege. However, once the information was obtained by government officials, it was used by those officials to obtain a warrant even after they were warned that information obtained from Ylisela would be privileged. This is clear from the record, and it is this scenario on which we base our holding that petitioner did not receive effective assistance of counsel.

**8.** Shiflet also attempted to exclude evidence seized as a result of the two other search warrants, but the issues involved are not relevant here.

involved in violating the privilege, there was no violation of the Sixth and Fourteenth Amendments involved in the use of that privileged information to obtain a warrant. The state appeals court also found that the complaint and affidavit for search warrant, absent the facts supplied by Ylisela, was still sufficient to establish probable cause.

▪▪▪ Shiflet's appeal to the Illinois Supreme Court was denied. Having exhausted his state remedies as required by 28 U.S.C. § 2254(b) (1982), Shiflet filed the present petition for habeas corpus.[9]

## PETITIONER'S CLAIM

### I. Federal Review of Petitioner's Claims Is Not Barred By *Stone v. Powell*

▪ A threshold issue which was raised by the state respondents in their motion for summary judgment is whether this Court is barred from adjudicating this habeas corpus petition under the United States Supreme Court's holding in *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). In *Stone v. Powell,* the Supreme Court held that a person convicted in state court could not challenge his or her conviction in a federal habeas corpus proceeding on the basis of an unconstitutional search and seizure in violation of the Fourth Amendment so long as the state had already provided a full and fair opportunity to litigate that claim. *Id.* at 494, 96 S.Ct. at

3052. Simply put, the state's argument in the present case is that Shiflet's habeas petition is essentially a Fourth Amendment claim clothed in Sixth Amendment terms. We reject that argument on its face.

The Supreme Court's holding in *Stone v. Powell* is narrowly prescribed to cases with Fourth Amendment claims specifically involving purportedly tainted evidence. Here, the evidence which petitioner sought to have excluded at his original trial was a direct outgrowth of information which was arguably obtained in violation of the Sixth Amendment. Although the remedy sought, the suppression of evidence, is similar to that invoked when Fourth Amendment violations have been established, the fundamental right involved is grounded in the Sixth Amendment. Furthermore, when evidence is obtained either directly or indirectly as a result of a Sixth Amendment violation, that evidence may be excluded at trial. *Bishop v. Rose,* 701 F.2d 1150, 1157 (6th Cir.1983). We strongly disagree with respondents' assertion that "the alleged denial of effective assistance ... has no independent significance beyond the question of whether the search which is argued to have resulted from the information was lawful or unlawful." In fact, at the heart of the asserted Sixth Amendment rights here is the fundamental constitutional right to effective assistance of counsel and to a fair trial in a criminal prosecution.[10]

---

**9.** We note that Shiflet did not pursue any state post-conviction remedies with respect to the issues presented here. However, exhaustion of state *post-conviction* remedies is not necessary where such an effort would be futile. Where, as here, the issues presented in a habeas corpus petition were raised on direct appeal from the state trial court and rejected by the state appellate court, post-conviction remedies are deemed futile since the appellate court decision would be *res judicata* as to those issues actually decided. *Perry v. Fairman,* 702 F.2d 119, 121 (7th Cir.1983); *United States ex rel. Williams v. Brantley,* 502 F.2d 1383, 1385 (7th Cir.1974); *People v. Gaines,* 105 Ill.2d 79, 87–88, 85 Ill.Dec. 269, 274, 473 N.E.2d 868, 873 (1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2666, 86 L.Ed.2d 282 (1985).

**10.** This Court notes a current dispute in the federal courts over whether habeas corpus relief

may properly be sought for a Sixth Amendment ineffective assistance of counsel claim where that claim is based solely on counsel's failure to raise a Fourth Amendment claim at or before trial. *Morrison v. Kimmelman,* 752 F.2d 918 (3d Cir.), *cert. granted,* —— U.S. ——, 106 S.Ct. 59, 88 L.Ed.2d 47 (1985) (habeas relief available); *Sallie v. North Carolina,* 587 F.2d 636 (4th Cir.1978), *cert. denied,* 441 U.S. 911, 99 S.Ct. 2009, 60 L.Ed.2d 383 (1979) (habeas relief available); *LiPuma v. Commissioner, New York Department of Corrections,* 560 F.2d 84 (2d Cir.), *cert. denied,* 434 U.S. 861, 98 S.Ct. 189, 54 L.Ed.2d 135 (1977) (habeas relief not available). The Seventh Circuit has not, to this Court's knowledge, addressed this issue. As discussed above, it is our view that the holding in *Stone v. Powell* is narrowly limited to claims raised directly under the Fourth Amendment and which implicate the rights guaranteed by that amend-

II. **Without the Privileged Information Obtained From Ylisela, There Was Insufficient Probable Cause To Justify A Second Search Of Petitioner's Apartment**

A second issue which we now address is whether there were sufficient facts, independent of the information disclosed by Ylisela in the complaint and affidavit for the October 3 search warrant, to establish probable cause to search the petitioner's apartment for a second time. The significance of this inquiry is that the evidence which petitioner sought to have excluded in the state court might have been admissible even if there was a violation of the Sixth Amendment resulting from Ylisela's disclosure and the use of that disclosure by the police, since the probable cause would have been derived from an independent source. *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); *United States ex rel. Owens v. Twomey*, 508 F.2d 858, 865–66 (7th Cir.1974).

The state appellate court held that the affidavit and complaint for the search warrant, with all information obtained from Ylisela excised, had sufficient basis for probable cause for a second search of the apartment. *People v. Shiflet*, 125 Ill. App.3d at 173, 80 Ill.Dec. at 604, 465 N.E.2d at 950.[11] Since probable cause is a legal, not a factual, determination we are permitted to address this question in the context of a Sixth Amendment claim even though the state court made a specific finding on the issue. We disagree with the state appellate court's determination that probable cause would have been established had Ylisela's information not appeared in the warrant.

According to the respondents, the affidavit contained "twenty separate allegations" of fact to support a probable cause determination independent of Ylisela's indiscretions. However, the warrant cannot withstand close constitutional analysis after the Ylisela information is deleted. First of all, many of these facts have absolutely no bearing on the necessity to search the apartment, but merely establish the fact that a crime took place. For example, Paragraph 1 of the non-Ylisela part of the complaint states that a female body was found by a jogger on October 1. Incidentally, this fact is repeated almost exactly in Paragraph 13. Furthermore, the complaint is replete with statements which would be of little relevance or at least would not be enough to establish probable cause, in the absence of the context in which Ylisela's information put them. For example, in Paragraph 4 it is stated that the victim's body bore a wound which was consistent with being struck in the head with a hammer. Of course, it had been learned from Ylisela that Shiflet used a hammer to kill his wife, making this factor particularly pertinent in the context of the entire complaint. Moreover, at the time the October 3 search took place, the police had already found an axe handle with blood traces in the trunk of Rose's car which they thought to be the murder weapon.[12] Also, other facts included in this affidavit were known

---

ment. However, even if the question raised by the *Morrison, Sallie* and *LiPuma* cases is ultimately resolved in a manner which would bar habeas relief in situations where counsel has failed to argue a Fourth Amendment claim for the defendant, we do not foresee that such a limitation would preclude relief in the present case. In the case where defense counsel has failed to make a Fourth Amendment claim, at least an argument can be made that an unconstitutional search and seizure is the fundamental focus of the constitutional challenge. However, the Fourth Amendment implications in this case are extremely attenuated from the central concern over whether Shiflet's counsel was rendered ineffective in a constitutional sense.

With this in mind, we proceed with our review of Shiflet's claim.

11. We note that the state appellate court held that "sufficient facts were known to the officers, without Ylisela's assistance, to induce them to return to the apartment seeking further evidence of the crime." But what was known to the police is not the relevant inquiry. The relevant inquiry is what was in the warrant aside from the information provided by Ylisela.

12. This belief is exhibited in the affidavit for the first search warrant obtained by Sergeant Weihofen.

prior to first search, and did not add anything to justify probable cause for a second search.

Other facts in the affidavit indicated that there were marks consistent with strangulation on the victim's neck. That fact had little bearing on the investigation absent the knowledge that petitioner had admitted to Ylisela strangling his wife in the process of the murder and certainly did not contribute to a probable cause determination to search the apartment. At that point, it was still assumed that the cause of death was the blow to the head. That was later confirmed by a medical examiner. There were some facts in the affidavit which, if supported by other evidence, might have established probable cause. These facts relate to the observance of scratches on the petitioner's arms and the observation by two different people that the victim's nails had been cut very closely when she ordinarily wore them long and well-groomed. However, these facts must be examined on the assumption that there was no knowledge of how the crime took place. In that context, these facts would still not have been able to sustain a probable cause challenge.

Finally, there are a couple of facts stated in the warrant which underscore the lack of probable cause in the absence of Ylisela's disclosure. In Paragraphs 8, 9 and 15 of the complaint, it is stated that neither blood stains nor a wet spot was observed on the carpet during the course of the October 1 search of the Shiflet apartment and that no blood stained plastic bag had been found. Of course, with the complete knowledge of the crime and its aftermath obtained from Ylisela, the police knew exactly what to look for and ultimately did seize sections of the carpeting and carpet padding in the course of the October 3 search.

We are not convinced that the facts stated in the warrant independent of those obtained from Ylisela were sufficient, without more, to establish the necessary probable cause to procure a search warrant. The law enforcement officials might well have discovered information through legitimate sources which, added to these independent facts, would have supported a probable cause determination at a later time. However, upon careful review of the papers filed in support of the search warrant in question, we disagree with the state appellate court's determination that there was adequate probable cause for the search even without Ylisela's disclosure of privileged information.

III. Petitioner Did Not Receive Effective Assistance Of Counsel, And Therefore Did Not Receive A Fair Trial In State Court

A. The Crime-Fraud Exception to the Attorney-Client Privilege Does Not Apply in This Case

■ The State argues that there is no violation of the Sixth Amendment here because the petitioner sought to cover up his crime when he gave information to Ylisela. The crime-fraud exception to the attorney-client privilege is a principle which amounts to a waiver of that privilege in cases where a client seeks to commit a crime or fraud in his or her disclosures to the attorney. We choose not to disturb the ruling of the state courts on this issue. None of the examples of purported "fraud" cited by the State is, as a matter of law, within the crime-fraud exception. Shiflet was merely seeking legal counseling, and his statements were clearly privileged. The State argues that Shiflet is engaging in an abuse of the habeas corpus process by attempting to have the evidence excluded in this case. On the contrary, the issues raised by Shiflet illustrate important concerns which should be of concern to all those involved in the administration of criminal justice.

■ Furthermore, the fact that Shiflet's statements to Ylisela were excluded from use at trial does not eliminate the constitutional violation. The State asserts that none of Shiflet's rights was violated since the privileged statements were not introduced at trial. This argument has little credence, since it is a well-founded principle

that, where there has been a violation of a criminal defendant's Sixth Amendment rights, any evidence either directly or indirectly obtained as a result of the constitutional violation is not admissible. *See, e.g., Bishop v. Rose,* 701 F.2d 1150, 1157 (6th Cir.1983).

B. When Extremely Prejudicial Disclosure of a Privileged Communication is Made to the Government and the Information Obtained is Used to the Defendant's Detriment, the Defendant's Right to Effective Assistance of Counsel has been Violated Despite the Absence of an Intentional Governmental Intrusion.

■ Having disposed of these preliminary issues, we now turn to the question of whether petitioner Shiflet was tried in violation of his Sixth and Fourteenth Amendment rights to effective assistance of counsel and a fair trial. The Constitution guarantees to each criminal defendant the right "to have the Assistance of Counsel for his defence." U.S. Const. amend. VI; *Maine v. Moulton,* — U.S. —, —, 106 S.Ct. 477, 483–84, 88 L.Ed.2d 481 (1985). This right, along with others set forth in the Sixth Amendment, make up what has been broadly denominated as the defendant's right to a fair trial. Given the complexity of law in modern society, the right to counsel is the *sine qua non* of the fair trial right for the criminal defendant. Furthermore, it has been well established for many years that this right encompasses the equally important guarantee of the right to the effective assistance of that counsel. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). This standard is absolutely necessary if there is to be any meaning to the Sixth Amendment rights.

Just what constitutes a denial of effective assistance of counsel has been the subject of voluminous litigation since the right was first recognized. Fundamentally, the actual denial of defense counsel in a criminal prosecution is a violation of the Sixth Amendment. *Gideon v. Wainwright,* 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963). Furthermore, the constructive denial of counsel in light of that counsel's inability to properly represent the defendant is prohibited by the Sixth Amendment. *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067.

Ineffective assistance claims arise in several different contexts. First, extreme incompetence on the part of the defendant's attorney can support a claim that the right to counsel has been undermined. *See United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). In other cases, affirmative acts of intrusion on the government's part resulting in disclosure of confidential communications have negated any right to effective counsel that the defendant may ostensibly have had and prejudice to the defendant is presumed. *United States v. Levy,* 577 F.2d 200, 208 (3d Cir.1978); *Coplon v. United States,* 191 F.2d 749 (D.C.Cir.1951), *cert. denied,* 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690 (1952). In other instances, a showing of prejudice is necessary to support a defendant's claim that her Sixth Amendment rights have been violated. *See, e.g., Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). Courts have shied away from bright line rules in this area, preferring a standard by which the actual prejudice to the criminal defendant can be assessed on a case-by-case basis.

■ We know of no case which presents an issue precisely like the one raised here by Shiflet. While the extent of Sixth Amendment protections with respect to the attorney-client privilege has been evaluated by courts in other contexts, the level of the government's affirmative actions and the extent of disclosure provided to and used by the government here are unique. Nevertheless, we hold that given the totality of circumstances surrounding this case, Shiflet was tried and convicted in violation of his Sixth and Fourteenth Amendment rights.

In Shiflet's case, there was never any argument that the prosecution affirmatively planned to surreptitiously obtain information from the defense counsel's investigator. However, it should also be noted that the government's behavior upon discovering the violation of Shiflet's privilege was not "entirely passive" as the respondents have asserted. As indicated in the complaint for the warrant itself, the government officials discovered that the information was privileged after they obtained it. Nevertheless, they went ahead and procured the warrant, largely on the basis of this information. *See* note 7 *supra.*

The State in this case argues that no constitutional violation can occur where government officials have not made an affirmative intrusion into the privileged relationship between client and attorney. The line of cases dealing with this issue, at first glance, seems to rely on the distinction between information which was obtained as part of an intentional government plan and that which is obtained without such planning. However, upon closer analysis, these cases merely eschew a bright-line rule which would base a Sixth Amendment violation on the prosecution's behavior without a further showing of prejudice. *Weatherford v. Bursey,* 429 U.S. 545, 557–58, 97 S.Ct. 837, 844–45, 51 L.Ed.2d 30 (1977); *United States v. Brugman,* 655 F.2d 540, 546 (4th Cir.1981). Thus, intentional government intrusion has never been, nor should it be, the only benchmark of a Sixth Amendment claim.

Hence, a finding of intentional intrusion by the State into the attorney-client relationship is not crucial to the Court's holding today. Where government use of privileged information obtained by windfall causes extreme prejudice to the defendant and renders his right to counsel virtually meaningless, a constitutional problem arises. What happened to Shiflet should not be permitted to happen to any criminal defendant. The extent to which Shiflet was prejudiced in this case as a result of the disclosure of privileged information is of the greatest extremes. Indeed, he was thrust into a virtual twilight zone of criminal procedure when information which he assumed was entitled to the utmost privilege was provided directly to law enforcement officials. As a result of this bizarre turn of events, Shiflet was unable to receive the fair trial to which he was entitled under the Constitution. As one commentator has observed, "if courts simply ensure access to counsel, without recognizing the client's underlying right to communicate privately with his attorney, they may render ineffective the legal assistance that the Constitution guarantees." Note, *Government Intrusions Into The Defense Camp: Undermining the Right to Counsel,* 97 Harv.L.Rev. 1143, 1144 (1984).

The Supreme Court's decision in *Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), provides a basic Sixth Amendment analysis with respect to the breach of the attorney-client privilege. In *Weatherford,* an undercover government agent was arrested along with the defendant. At the defendant's request, the agent attended two pretrial conferences between defendant and his attorney. The agent obliged the defendant in order to preserve his cover, but he also testified as a witness for the prosecution at the defendant's trial. After his conviction, the defendant filed an action under 42 U.S.C. § 1983 (1982) on the grounds that in intruding on the attorney-client relationship the government agent had denied him his right to effective assistance of counsel under the Sixth and Fourteenth Amendments and deprived him of due process under the Fourteenth Amendment. Even though a state law enforcement agent had intruded upon the attorney-client relationship, the Court held that there was no constitutional violation as long as the agent did not reveal strategy or information regarding the pending charges. 429 U.S. at 558, 97 S.Ct. at 845.

Thus, the two most important elements for the purpose of defining Sixth Amendment rights seem to be the level of government intrusion and the extent to which a defendant has been exposed to prejudice

resulting from the disclosure of privileged information. The Court in *Weatherford* merely held that the Fourth Circuit Court of Appeals had applied an incorrect *per se* rule finding a Sixth Amendment violation solely because privileged information had been overheard by a government agent. In so doing, the Court focused on the lack of prejudice resulting from this intrusion, since none of the information overheard was used in either a direct or indirect manner in the prosecution of the defendant. 429 U.S. at 552, 97 S.Ct. at 842.

On the contrary, in the present case, the privileged information was used to a significant extent by the government. Moreover, the *Weatherford* Court distinguished its holding from other factual situations when it declared that "this is not a situation where the State's purpose was to learn what it could about the defendant's defense plans and the informant was instructed to intrude on the lawyer-client relationship *or where the informant has assumed for himself that task and acted accordingly.*" *Id.* at 557, 97 S.Ct. at 844 (emphasis added).[13] Thus, in certain circumstances, the absence of an improperly motivated government intrusion combined with an extremely prejudicial disclosure may constitute a Sixth Amendment violation.

The *Weatherford* decision, and subsequent interpretation thereof, provide a general framework for analysis of Sixth Amendment claims involving an intrusion into the relationship between client and attorney. It is clear that this Sixth Amendment analysis involves consideration of the factual circumstances, in the totality, which may have resulted in the denial of defendant's right to a fair trial. It is a consideration of both the extent to which the government has intruded in an affirmative manner upon the defendant's privileged relationship with his or her attorney, as well as the extent to which the defendant has been prejudiced by disclosure of privileged information. For example, the Fourth Circuit in *United States v. Brugman,* 655 F.2d 540, 546 (4th Cir.1981), listed several factors which it considered in its Sixth Amendment analysis:

(1) whether the presence of the informant was purposely caused by the government in order to garner confidential, privileged information, or whether the presence of the informant was a result of other inadvertent occurrences; (2) whether the government obtained, directly or indirectly, any evidence which was used at trial as a result of the informant's intrusion; (3) whether any other information gained by the informant's intrusion was used in any other manner to the substantial detriment of the defendant; and finally, (4) whether the details about trial preparation were learned by the government.

It is factors such as these which courts must weigh in the delicate balancing involved in Sixth Amendment/attorney-client privilege claims.

We thus reject the conclusion that affirmative, planned governmental intrusion on the attorney-client relationship is an absolute prerequisite to a finding that the defendant's Sixth Amendment rights have been violated. This is consistent with other courts' analyses, such as the Fourth Circuit in *Brugman,* which cautioned that:

Our conclusion is not to be deemed a *per se* rule that it is only the intervention of government agents and their subsequent actions which will warrant a conclusion of violations of a defendant's Fifth and Sixth Amendment rights under the constitution.

*Brugman,* 655 F.2d at 546.

Other courts, employing a broad circumstantial analysis, have evaluated prejudicial

---

**13.** Furthermore, in terms of pure privilege law, it is unclear that the defendant in *Weatherford* did not waive his privilege by discussing his case with his attorney in the presence of an unnecessary third party. That point also distinguishes that case from this one since it is clear that an investigator hired by an attorney to work on a defendant's case is a party necessary to the attorney's representation, and therefore communications to the investigator are equally privileged as those made to the attorney. *People v. Knippenberg,* 66 Ill.2d 276, 6 Ill.Dec. 46, 362 N.E.2d 681 (1977).

disclosures where the government officials' conduct was relatively passive. For example, in a case where a privileged communication was inadvertently discovered by the police and used at trial, the Sixth Circuit Court of Appeals held that the defendant's Sixth Amendment rights had been violated. *Bishop v. Rose*, 701 F.2d 1150, 1157 (6th Cir.1983). The defendant in *Bishop* was incarcerated in a county jail pending his trial for murder. An escape attempt by his cellmates occurred while defendant was in the jail, though he was not involved in that attempt. When the police searched the jail after the escape attempt, they discovered a written document prepared by defendant at the request of his attorney. The document detailed the events of the alleged murder as defendant recalled them. Defendant promptly notified an employee of the sheriff's office when he discovered that the document was missing from his cell, and further warned the law enforcement officials that the document was intended to be used by his attorney in preparing his defense. The document was eventually returned, but not before the police made copies and supplied them to the investigating officers. At the defendant's trial, the prosecutors used a copy of the document to impeach the defendant, who chose to testify in his own behalf. Following his conviction and an unsuccessful attempt to get a new trial through different state procedures, defendant filed a petition for a writ of habeas corpus. The Sixth Circuit affirmed the district court's granting of the habeas petition on the ground that the use of the privileged document was in violation of defendant's Sixth Amendment rights. 701 F.2d at 1157. There was no dispute in *Bishop* that the search of the jail cell after the escape attempt was valid, and that the police officers had the right to be in the cell where they found the document. Furthermore, the document had no markings with respect to its privileged nature nor was it addressed to the defendant's attorney. Thus, as in the present case, the evidence was received as a windfall without premeditation on the part of the government offi-

cials. Nevertheless, the Sixth Circuit found a Sixth Amendment violation under these circumstances since the privileged information was used for the benefit of the prosecution and to the defendant's substantial detriment, thus establishing the necessary level of prejudice despite the lack of a planned governmental intrusion. *Id.* at 1156. The similarity to the present case extends to the indirect use of the privileged information as well. In *Bishop*, the government was prevented from introducing the document at trial, but used it instead to impeach the defendant. Here, Shiflet's statements were not introduced at trial, but the government used those statements to obtain other evidence which was used in its case.

We also find helpful the analysis of the Illinois Supreme Court in *People v. Knippenberg*, 66 Ill.2d 276, 6 Ill.Dec. 46, 362 N.E.2d 681 (1977). In that case the defendant, in an appeal from his murder conviction, argued that he was denied a fair trial by the prosecutor's improper use of a privileged statement which defendant had made to a defense investigator to impeach defendant at trial. The defendant had made statements to an investigator for the Illinois Defender Project who had been engaged by the defendant's attorney to aid in the defense. The investigator prepared a summary of the interview with defendant which somehow found its way into the hands of the government's attorneys. It was not clear from the record how this summary was obtained by the prosecutors, but the method of disclosure was not important to the court's decision that "[w]hat occurred here was violative of the notion of a fair trial and completely offensive to the concept of the effective assistance of counsel. The prejudice to the defendant was grave and inexcusable." *Id.* at 285, 6 Ill. Dec. at 50, 362 N.E.2d at 685. In the present case, despite the lack of proof of an intentional intrusion upon Shiflet's privilege by the government, we find the prejudice to the petitioner equally inexcusable.[14]

14. Although the state court in this case made findings that petitioner was not prejudiced by

The standards for evaluating Sixth Amendment claims where there has been an unauthorized disclosure of information protected by the attorney-client privilege provide for the careful assessment of the level of prejudice to which a defendant has been subjected. In Shiflet's case that prejudice has been extreme. Although no details regarding Shiflet's trial strategy were disclosed, fundamental privileged information about the events which took place on the night of Rose Shiflet's death were provided directly to the police. In any event, tactics are of little help to a criminal defendant when the state has a window to his case. Furthermore, despite the fact that Ylisela was not planted in the defense team by the prosecution, state officials continued to make improper use of information they knew to be privileged at the time they sought the warrant for the October 3 search of Shiflet's apartment. In this manner, the State was able to obtain critical evidence as a result of the disclosure of the privileged information. Moreover, there can be little doubt that the privileged information was used to the substantial detriment of Shiflet. Direct access to internal information known only to members of Shiflet's criminal defense team could only have helped the prosecution in all manners as the State's case was prepared and tried.

The necessity of a constitutional rule protecting defendants from the circumstances that befell John Shiflet is similar to the rationale underlying the attorney-client privilege in general. We cannot agree with the state appellate court's conclusion that a finding of constitutional infirmity in this case would encourage criminal defendants to sabotage their own cases by having privileged information disclosed. The state appellate court stated that "enlightened defendants may well seek to arrange a similar breach of the privilege to foreclose the production or use of evidence against them" if the Sixth Amendment right pre-

vents the use at trial of information disclosed in violation of the attorney-client privilege. *People v. Shiflet*, 125 Ill.App.3d 161, 173, 80 Ill.Dec. 596, 604, 465 N.E.2d 942, 950 (2d Dist.1984). Not only is this unlikely in the most practical sense, but also, as a matter of law, this behavior would constitute a waiver of the attorney-client privilege which would render the Sixth Amendment protection useless. On the other hand, if this right is not upheld in the context of factual situations such as these, criminal defendants may be unwilling to make full and candid disclosure to their attorneys of all relevant information necessary for their defense.

This Court's ruling today should be construed as a mere extrapolation of principles outlined by other federal courts in assessing violations of the Sixth Amendment arising from the breach of the attorney-client privilege. Under the totality of the circumstances in the present case, we find that Shiflet did not receive a fair trial in state court because his counsel's effectiveness was severely undermined by misconduct on the part of a defense investigator in disclosing privileged information directly to law enforcement officials. The effect of such disclosure was so extreme that the minimal level of state intrusion does not foreclose Shiflet's constitutional claim. He is entitled to a new trial with the evidence obtained under the authority of the warrant for the second search of the apartment excluded. If within 30 days of this ruling the State does not elect to retry Shiflet, the writ shall issue. It is so ordered.

---

the chain of events resulting in Ylisela's unauthorized disclosures, we deem those findings, at the very least, as mixed questions of law and fact. Furthermore, since the extent of prejudice to the defendant is an element of his Sixth

Amendment claim, the findings we make today with respect to prejudice are well within our authority to interpret and apply the Constitution in habeas corpus proceedings.