UNITED STATES

v.

**Chad R. ANKENY, 374 68 9023 Lieutenant (0–3), U.S. Naval Reserve.**

**NMCM 87 2629.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 14 Jan. 1987.

Decided 27 March 1989.

LCDR J.J. Quigley, JAGC, USN, Appellate Defense Counsel.

Lt. J.A. Toliver, JAGC, USNR, Appellate Defense Counsel.

Lt. Howard B. Goodman, JAGC, USNR, Appellate Government Counsel.

Before BYRNE, COUGHLIN and RUBENS, JJ.

COUGHLIN, Senior Judge:

At a judge alone general court-martial, appellant was convicted, in accordance with his pleas, of two specifications of using cocaine and, contrary to his pleas, of one specification of soliciting a fellow officer to be derelict in his duties, in violation of, respectively, Articles 112a and 134 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 912a and 934. Appellant was sentenced to confinement for six months, total forfeiture of all pay and allowances, a $2000.00 fine, and dismissal from the Naval Service. The convening authority approved the sentence as adjudged and, in accordance with a pretrial agreement, suspended all confinement for a period of two years from the date of trial.

The assignments of error for review by this Court relate solely to the guilty finding under the Article 134, UCMJ, charge of soliciting another to commit an offense. The facts underlying both the assignments and the charge are briefly summarized below.

Shortly after submitting a urine sample for urinalysis, appellant, on or about 20 October 1986, contacted the officer in his squadron responsible for the collection and custody of urine samples, Lieutenant Junior Grade Anderson, and asked him if he would replace appellant's sample with a new sample. Lieutenant Junior Grade Anderson, however, would not permit the substitution of the appellant's sample and

that sample then tested positive for cocaine. In light of his predicament, appellant retained a civilian attorney in early November and informed him of this positive urinalysis as well as an earlier one.[1] The appellant confidentially revealed to the attorney as part of their attorney-client relationship the fact that he had solicited Anderson to exchange his urine samples.

On 19 November at an official Navy reception on board the Norfolk Naval Base, appellant's civilian attorney, in a conversation with the assistant staff judge advocate for the general court-martial authority over appellant's command, revealed appellant's confidential communication concerning his solicitation of Anderson.[2] Prior to this unauthorized disclosure by the civilian attorney of his client's confidences, the Government had absolutely no knowledge of appellant's solicitation of Anderson. The assistant staff judge advocate immediately repeated the conversation to his superior, the staff judge advocate, who, in turn, relayed the confidence to the appellant's commanding officer for further investigation. The next day, armed with this revelation, the commanding officer asked Anderson if there was anything further he had to add with respect to the collection of appellant's urine sample and, in response, Anderson recounted the details of appellant's solicitation. Based on these events, the appellant was charged with the solicitation offense in addition to the prior drug offenses.

Prior to arraignment, appellant's new civilian attorney[3] moved to suppress the Government's evidence on the solicitation specification on the basis that it was obtained in violation of the attorney-client relationship and in abrogation of the appellant's sixth amendment right to the effective assistance of counsel. The appellant's evidence on this motion consisted of a stipulation of fact that prior to his attorney's

unauthorized disclosure the Government possessed no knowledge that the accused had solicited Anderson to commit an offense and, furthermore, the commanding officer would not have approached Anderson but for the information received from appellant's former attorney via the staff judge advocate. Appellate Exhibit III.

The sole evidence presented by the Government to defeat appellant's motion was the testimony of Anderson. Anderson acknowledged that he had not reported to anyone the solicitation by the appellant, who was his friend, during the entire 30–day period following the solicitation and only did so when questioned by his commanding officer. He further acknowledged that he originally had no intention of ever reporting it but, when the test came back positive, thought "well, maybe I should say something." R. 12. Anderson vacillated but finally decided, according to his testimony, that he would come forward when the right circumstances occurred. Notwithstanding this testimony, however, 30 days had passed since the solicitation, and he had not yet determined to whom he would report the incident, nor had he determined what the "right circumstance" would be until questioned by his commanding officer. Finally, on cross-examination, Anderson admitted that after informing the commanding officer of the solicitation, he was counseled concerning his failure to report the incident earlier and received a non-punitive letter of caution for not having done so.

Despite the less than convincing testimony of Anderson and the stipulation of fact, the military judge denied appellant's motion to suppress the evidence finding, *inter alia,* that "the evidence of the solicitation offense, with reasonable probability, would

---

1. These two positive urinalysis tests formed the basis for the two use of cocaine offenses set forth in Specifications 1 and 2 of Charge I.

2. Although the record contains no explanation or motive for the attorney's unauthorized disclosure, the Court will presume for the purposes of this review that his breach of the attorney-client relationship was unintentional.

3. Prior to trial, appellant discharged the civilian attorney as a result of the breach of the attorney-client relationship and retained another civilian attorney who represented him at trial along with assigned military counsel.

have been discovered in the due course of any investigation." R. 24.

Before this Court, appellant raises the following assignments of error:

## I

THE VIOLATION OF THE ATTORNEY–CLIENT PRIVILEGE REQUIRES THE DISMISSAL OF CHARGE II AND ITS SPECIFICATION.

## II

APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

In essence, the appellant asserts that his attorney's unauthorized disclosure to the Government of his confidential communication[4] led directly to the solicitation charge, and thus constituted ineffective assistance of counsel in denial of his sixth amendment rights. We agree. *See United States ex rel. Shiflet v. Lane*, 625 F.Supp. 677 (N.D. Ill.1985), *rev'd*, 815 F.2d 457 (7th Cir. 1987);[5] *Cf. United States v. McCluskey*, 6 U.S.C.M.A. 545, 20 C.M.R. 261 (1955).

In *McCluskey* the accused had consulted with a judge advocate regarding the legal aspects of his first and second marriages. Subsequently, the same judge advocate was appointed trial counsel to prosecute the accused on bigamy and other charges. In preparing for trial, the judge advocate drafted messages requesting that depositions be taken from relatives of the accused's first wife to establish certain elements of the offense of bigamy and addressed additional correspondence to certain officials regarding aspects of the accused's first marriage. Shortly thereafter, the judge advocate was relieved as trial counsel and thus did not prosecute the accused when his case came up for trial. In dismissing the charges affected by the breach of the confidential relationship, the Court of Military Appeals found that the judge advocate utilized the confidences tendered him in an effort to obtain evidence of sufficient weight for the Government to successfully prosecute his former client.

We view the *McCluskey* Court's reversal as not resting on the judge advocate's conflict of interest, but rather on the principle that evidence developed as a consequence of a breach of the attorney-client relationship may not be used to convict the client. In absence of such a principle, the accused would be wronged in law but the law would provide no effective remedy. Even more important, the primary purpose behind the confidentiality of the attorney-client relationship would be defeated.[6] As stated in *United States v. Fair*, 2 U.S.C.M.A. 521, 10

---

**4.** The attorney in question voluntarily reported the matter to his state bar of Virginia, as a possible violation of Canon 4 of Virginia's Code of Professional Responsibility mandating that a lawyer preserve the confidences and secrets of a client. Attachment 1 of Appellate Exhibit I. It is noted that the Professional Conduct of Judge Advocates, promulgated by the Judge Advocate General of the Navy, is now applicable to civilian attorneys practicing before our courts-martial. JAG INSTRUCTION 5803.1, dtd 26 October 1987, paragraph 4.C.(1). Rule 1.6 of the Rules of Professional Conduct of Judge Advocates mandates that an attorney protect his client's confidences. *See also* Rule 1.6(a) of the American Bar Association Model Rules of Professional Conduct which provides, "[a] Lawyer shall not reveal information relating to representation of a client unless the client consents after consultation...." *See also* R.C.M. 502(d)(6), Discussion at (B) (Defense counsel must ... represent the accused with undivided fidelity and may not disclose the accused's secrets or confidences except as the accused may authorize (*See also* Mil.R.Evid. 502)).

**5.** The Circuit Court of Appeals in reversing the District Court did not address the issue of application of the sixth amendment, because they ruled on the threshold question that the sixth amendment had not yet attached at the time of the unauthorized disclosure. We thus consider the sound reasoning and rationale of the District Court to be both viable and applicable to the resolution of this appeal.

**6.** The principle of confidentiality is given effect in both the attorney-client privilege and the rule of confidentiality. The attorney-client privilege is a rule of evidence that applies in judicial proceedings, while the rule of confidentiality is a mandate of professional ethics that applies even beyond the courtroom doors. The confidentiality rule covers all information relating to the representation from whatever the source, not merely to matters communicated in confidence by the client and prohibits the disclosure of such information except as authorized or required by the Rules of Professional Conduct or other law. ABA Model Rules of Professional Conduct, Rule 1.6, Comment (5).

C.M.R. 19 (1953), the principle of confidentiality was "designed to encourage full and unrestrained communication between client and attorney." It exists "for the purpose of providing a client with assurances that he may disclose all relevant facts to his attorney safe from fear that his confidences will return to haunt him." *United States v. Turley*, 8 U.S.C.M.A. 262, 24 C.M.R. 72 (1957), *citing United States v. Marrelli*, 4 U.S.C.M.A. 276, 15 C.M.R. 276 (1954). *See also United States v. Green*, 5 U.S.C.M.A. 610, 18 C.M.R. 234 (1955). Thus, a holding by this Court affirming the conviction based on evidence directly derived from an attorney's breach of the attorney-client relationship would countermand the purpose behind protecting such confidences and could only serve to discourage clients from the free and full disclosure of facts. This consequence would be both abhorrent and contrary to the interests of justice. It would also fly in the face of the "zealous" endeavors of the Court of Military Appeals to safeguard and strengthen the confidences of the client arising from the attorney-client relationship. *United States v. Turley*, 24 C.M.R. at 75.

Our decision to set aside the findings of guilty as to Charge II and its Specification is based on the denial of effective assistance of counsel guaranteed by the sixth amendment to the United States Constitution.[7] *See Maine v. Moulton*, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985).

### I

■ It is generally recognized that before an accused can be denied the right to effective assistance of counsel, the right to counsel must first attach under the sixth amendment. *See Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). Prior to *United States v. Wattenbarger*, 21 M.J. 41 (C.M.A.1985), the sixth amendment right to counsel did not attach in the military until preferral of charges. *Wattenbarger*, 21 M.J. at 43, *citing United States v. Adams*, 21 U.S.C.M.A. 401, 405, 45 C.M.R. 175, 179 (1972); and *United States v. Moore*, 4 U.S.C.M.A. 482, 486, 16 C.M.R. 56, 60 (1954). In *Wattenbarger*, the Court of Military Appeals held that "the test for sixth amendment purposes is whether adversary judicial proceedings have been instituted against a subject," even though charges had not yet been preferred. *Wattenbarger*, 21 M.J. at 44. *See also Moran v. Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) (by its very terms [the sixth amendment] is applicable only when the Government's role shifts from investigation to accusation). *Id.*, 475 U.S. at 430, 106 S.Ct. at 1146.

In the case *sub judice*, the breach of the attorney-client relationship forming the basis of the ineffective assistance of counsel claim occurred on 19 November. We conclude that, despite preferral date of 25 November, the Government's role had shifted from investigation to accusation and that adversary proceedings had been instituted against the appellant prior to the date of counsel's offending disclosure on 19 November so that his sixth amendment right to counsel had legally attached.

We derive the foregoing conclusion from both the nature of appellant's offenses and the documents of record. Appellant had tested positive twice on urinalysis tests and these results were in the hands of the Government prior to his retaining civilian counsel in early November. *See* Attachment 1 to Appellate Exhibit I. Thus, at the time of the attorney's unauthorized disclosure, the appellant was not a suspect in an

---

7. We specifically do not base our decision on Military Rule of Evidence (Mil.R.Evid.) 511(a), Manual for Courts–Martial, United States, 1984, which provides:

Evidence of a statement or other disclosure of the privileged matters is not admissible against the holder of the privilege if disclosure was compelled erroneously or was made without an opportunity for the holder of the privilege to claim the privilege.

Although the unauthorized disclosure by the civilian attorney clearly falls within Mil.R.Evid. 511(a), neither the civilian attorney nor any of the Government officials to whom the confidential matter was communicated testified at trial. Accordingly, Mil.R.Evid. 511(a) was not violated. Nor are we willing to extend the exclusionary rule of Mil.R.Evid. 511(a) via the fruit of the poisonous tree doctrine so as to artificially create a basis for the dismissal of the charge.

784

investigation but rather the targeted object of forthcoming proceedings of an adversarial nature. Although his commanding officer had not yet reached a final decision as to the disposition of the yet to be preferred "charges," he had already begun to exercise his prosecutorial discretion. Furthermore, the general court-martial convening authority over the appellant's case had been made aware of the situation. Appellate Exhibit II (Government's Response to Defense Motion to Suppress). Finally, when the appellant's commanding officer approached Anderson concerning the matter, they both considered that a urinalysis case already existed against the appellant. Appellate Exhibit II. Under these circumstances we cannot but conclude that "adversary judicial proceedings had been instituted against the accused," even though the formal preferral of charges occurred a few days later.

## II

■ Having determined that the appellant's right to counsel had already attached, we next turn to the issue of whether the offending disclosure constituted ineffective assistance of counsel in violation of appellant's sixth amendment rights. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Scott*, 24 M.J. 186 (C.M.A. 1987). In resolving this issue, we initially find that the appellant's communication to his civilian counsel concerning the solicitation of Anderson was confidential and his counsel's disclosure of the communication to the Government was unauthorized and thus violated the attorney-client relationship to the detriment of the appellant.

The Government argues, as it did in *United States ex rel. Shiflet v. Lane*, that no sixth amendment violation can occur where Government officials have not made an affirmative intrusion into the privileged relationship between client and attorney. We disagree, and conclude, as did the lower court in *Shiflet*, that intentional Government intrusion has never been, nor should it be, the only benchmark of a sixth amendment claim.[8] "Where government use of privileged information obtained by windfall causes extreme prejudice to the defendant and renders his right to counsel virtually meaningless a constitutional problem arises." *Shiflet*, 625 F.Supp. at 686. Accordingly, even though the Government in the case *sub judice* obtained the confidential information through no improper conduct of its own, a sixth amendment violation occurred since the disclosure proved to be extremely prejudicial to the defendant.[9] The extreme prejudice to the appellant is patently clear since, absent the disclosure, the Government would not have questioned Anderson and thus would not have procured the only evidence in support of the charge and conviction of appellant on the solicitation offense. Furthermore, contrary to the opinion of the military judge, we conclude there exists no reasonable probability that the offense under Charge II would have otherwise been discovered. That is, we have no confidence that Anderson would have independently come forward to report the solicitation, particularly since he had not done so for some 30 days after it had transpired.

Thus, we conclude that the appellant must prevail on his ineffective assistance of counsel claim as to Charge II since he has established both incompetence and prejudice under the test set forth by the Supreme Court and adopted by the United States Court of Military Appeals:

**8.** The *Shiflet* Court distinguished the Supreme Court decision in *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), by noting that *Weatherford* merely held that it is incorrect to apply a *per se* rule finding a sixth amendment violation solely because the Government overheard a privileged communication. Rather, the *Weatherford* Court looked for prejudice to the defendant and found none "since none of the information overheard was used in either a direct or indirect manner in the prose-

cution of the defendant." *Shiflet*, 625 F.Supp. at 687 (quoting *Weatherford*, 429 U.S. at 552, 97 S.Ct. at 842).

**9.** Although there was no Government intrusion in obtaining the unauthorized disclosure, it must be noted that Government officials nevertheless affirmatively initiated an investigation based on the information knowing that it was disclosed to them in an unauthorized manner.

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. at 2064; and *United States v. Scott*, 24 M.J. at 187.

Accordingly, we set aside the findings of guilty to Charge II and its specification and dismiss that charge. The remaining findings of guilty are affirmed. Upon reassessment of the sentence we set aside the fine of $2,000.00. Otherwise, we affirm the sentence as approved on review below including the dismissal from the Naval Service.[10]

Judge RUBENS concurs.

BYRNE, Chief Judge
(concurring/dissenting):

I concur that Military Rule of Evidence (Mil.R.Evid.) 511(a) was not violated. I dissent from the majority's dismissal of Charge II and its Specification on the basis of ineffective assistance of counsel. Appellant asserts two assignments of error. I will address both assignments of error in the order they are presented in his brief.

I

## The Violation of the Confidential Communication Issue

The civilian attorney's divulgence to the assistant staff judge advocate of his client's conversation with Lieutenant Junior Grade Anderson was a violation of a confidence between client and attorney. Rule 1.6, ABA Model Code of Professional Conduct.[1] Appellant asserts that this violation of counsel's ethical obligation together with the fact that it led to an additional charge mandates dismissal of that charge and reassessment of the sentence. In support of his position, appellant cites *United States v. Turley*, 8 U.S.C.M.A. 262, 24 C.M.R. 72 (1957); *United States v. McCluskey*, 6 U.S.C.M.A. 545, 20 C.M.R. 261 (1955); and *United States v. Green*, 5 U.S.C.M.A. 610, 18 C.M.R. 234 (1955). These cases are distinguishable.[2]

*United States v. Turley* and *United States v. McCluskey* are both conflict of interest cases · in which the trial counsel involved used client confidences, obtained in earlier representations of the accused, in prosecuting the accused. *United States v. Green* concerns a memorandum of expected testimony prepared by defense counsel *at the request of the staff judge advocate* and passed on to the trial counsel for use at trial. In the instant case, we are concerned with neither defense counsel's assumption of duties in conflict with his client's interests nor with a Government-instigated breach of confidentiality. The instant issue arises from the *inadvertent disclosure* by civilian defense counsel,

---

**10.** We note that the 2–year period of the suspension of the sentence to confinement has run in its entirety prior to the date of this decision and, accordingly, that part of the sentence has been remitted assuming it was not sooner vacated. We further note that the sentence to a fine was not based on either unjust enrichment or other good reason of record. In view of our action of setting aside the fine upon reassessment, however, we need not decide whether a fine was appropriate under the circumstances. *See United States v. Czeck*, 28 M.J. 563 (N.M.C.M.R. 1989).

**1.** "A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, ..."

**2.** *United States v. Brooks*, 2 M.J. 102 (C.M.A. 1977), is a conflict of interest case in which confidential information was allegedly disclosed by the accused's counsel, under circumstances of "strict confidence", to a chief of military justice who was later appointed assistant trial counsel in accused's case. *Id.*, at 104. The United States Court of Military Appeals did not resolve various "assumptions," including whether the defense counsel believed he could consult with the chief of military justice for advice on matters relating to the defense, preferring instead to dispose of the case on the basis that the use made of the communication was harmless to the accused and that the conviction was "otherwise valid." *Id.*, at 105.

while the case was still under investigation, of a confidential matter falling within the boundaries of the attorney-client privilege. Thus, while the three cases cited by the appellant are instructive with respect to the inviolability of the attorney-client relationship and the duties owed by defense counsel to former clients, those cases are inapposite to the instant case.

Military Rule of Evidence 511(a), Manual for Courts–Martial, United States, 1984, provides as follows:

Evidence of a statement or other disclosure of privileged matter is not admissible against the holder of the privilege if disclosure was compelled erroneously or *was made without an opportunity for the holder of the privilege to claim the privilege.*

(Emphasis added.) Clearly, the civilian attorney's disclosure to the assistant staff judge advocate was unauthorized and, thus, falls squarely within the above-emphasized portion of Mil.R.Evid. 511(a). However, neither the civilian attorney, nor any of the Government officials to whom the confidential matter was communicated, testified at trial. The evidence utilized to convict appellant on the charge in question consisted of a confessional stipulation of fact admitting each of the elements of the charged offense and signed by both appellant and his detailed defense counsel. The disclosure itself was not introduced into evidence. Consequently, Mil.R.Evid. 511(a) was not violated.

Thus, appellant's pretrial request to suppress "all evidence *discovered* by the government ... as a result of a breach of the attorney-client relationship by" the civilian attorney (Appellate Exhibit I (emphasis added)) and his current assignment of error requesting that the charge be dismissed are apparently based on an application of the "fruit of the poisonous tree" doctrine to the civilian attorney's unauthorized disclosure of his client's confidences. Likewise, the military judge apparently utilized this approach in reaching a result based upon his finding that Lieutenant Jun-

ior Grade Anderson would have come forward with evidence of the solicitation even if his commanding officer had not approached him and that, therefore, the evidence would have been inevitably discovered. "Fruit of the poisonous tree" and "inevitable discovery" emanate from the exclusionary rule established in *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914).[3] The Supreme Court has emphasized that

[t]he core rationale consistently advanced ... for extending the exclusionary rule to evidence that is the fruit of unlawful police conduct has been that this admittedly drastic and socially costly course is needed to deter police from violations of constitutional and statutory protections.

*Nix v. Williams*, 467 U.S. at 442–443, 104 S.Ct. at 2508–2509, 81 L.Ed.2d at 386–387. Thus, "[i]t is clear that the cases implementing the exclusionary rule 'begin with the premise that the challenged evidence is *in some sense* the product of illegal governmental activity.' " *Id.*, at 444, 104 S.Ct. at 2509, 81 L.Ed.2d at 387 (quoting *United States v. Crews* 445 U.S. 463, 471, 100 S.Ct. 1244, 1250, 63 L.Ed.2d 537 (1980)) (emphasis added in *Nix*).

In the instant case, the record is devoid of any police misconduct or governmental intrusion involving the appellant's attorney-client relationship with his civilian attorney. Therefore, the exclusionary rule, the "fruit of the poisonous tree" doctrine, and "inevitable discovery," are inapplicable. *See Nix v. Williams*, 467 U.S. 431, 104 S.Ct. at 2501; *see also Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

Absent evidence that a defense counsel's unauthorized disclosure of client confidences was prompted by the Government or was the product of his purposeful effort to further the Government's cause at the expense of his client, evidence adduced by the Government as a result of a lawful investigation into facts gleaned from that disclosure is not subject to a constitutional rule of exclusion. There being no evidence in-

**3.** *See Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), and *Wong Sun v.*

*United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (1963).

troduced at trial which would be rendered inadmissible under Mil.R.Evid. 511, I consider the appellant's assignment of error to be without merit.

II

*The Ineffective Assistance of Counsel Issue*

Appellant's second assignment of error, asserting Charge II and its specification must be dismissed on the grounds of ineffective assistance of counsel, is without merit.

The general rule in the military is that the "sixth-amendment right to counsel does not attach until preferral of charges." *United States v. Wattenbarger*, 21 M.J. 41, 43 (C.M.A.1985). In *Wattenbarger*, however, it was "not entirely clear when charges had in fact first been preferred against appellant, a situation not confronted in earlier cited military cases." *Id.*, at 44. Stating that in "any event, the test for sixth-amendment purposes is whether adversary judicial proceedings have been instituted against a suspect ...," *id.*, the United States Court of Military Appeals concluded that under "the facts of this case, we are convinced that appellant's sixth-amendment right to counsel attached within the meaning of *Kirby v. Illinois* [406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972)] and *Estelle v. Smith*, both *supra*, on December 19, 1980, before his command-ordered mental examination." *Id.* Previously, the Court had noted what these facts were:

(1) military authorities induced Australian authorities to waive jurisdiction and then accepted jurisdiction;

(2) after being placed in pretrial confinement the accused was advised of his rights at an impending Article 32 investigation, including his right to counsel;

(3) lawyers were made available for the impending pretrial investigation; and

(4) the doctor who conducted a command-ordered mental examination of appellant referred to *an earlier dated charge sheet* than the date of preferral

of charges upon which Wattenbarger was tried.

*Id.*, at 43–44.

In *United States ex rel. Shiflet v. Lane*, 815 F.2d 457, 464–65 (7th Cir.1987), the opinion which reversed the very case upon which the majority rely, Circuit Judge Ripple stated:

Just last Term, in *Moran v. Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986), the Supreme Court squarely reaffirmed that, "[b]y its very terms, [the sixth amendment] becomes applicable only when the government's role shifts from investigation to accusation." *Id.*, 106 S.Ct. at 1146.

This is because, after the initiation of adversary criminal proceedings, "the government has committed itself to prosecute, and ... the adverse positions of government and defendant have solidified. It is then that the defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law."

*Maine v. Moulton*, 474 U.S. 159, 106 S.Ct. 477, 484, 88 L.Ed.2d 481 (1985) (quoting *United States v. Gouveia*, 467 U.S. 180, 189, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146 (1984)). Indeed, this court has already stated that the "right to counsel attaches only when a defendant proves that, at the time of the procedure in question, the government had crossed the constitutionally-significant divide from fact-finder to adversary." *United States ex rel. Hall v. Lane*, 804 F.2d 79, 82 (7th Cir.1986); *see United States ex rel. Espinoza v. Fairman*, 813 F.2d 117, 120–22 (7th Cir.1987); *see also DeAngelo v. Wainwright*, 781 F.2d 1516, 1519–20 (11th Cir.1986).

Here, Mr. Shiflet apparently decided that the circumstances surrounding the discovery of his wife's murder made it prudent for him to consult counsel several hours after the body was discovered and while the police were still investigating the matter. Mr. Shiflet, however, cannot claim the protection of the sixth

amendment merely because he retained counsel prior to the filing of charges against him. In *Moran,* the Supreme Court explicitly noted that "it makes little sense to say that the Sixth Amendment right to counsel attaches at different times depending on the fortuity of whether the suspect or his family happens to have retained counsel prior to interrogation." 106 S.Ct. at 1146. Indeed, the Court expressly addressed the situation that confronts us here:

> [T]he suggestion that the existence of an attorney-client relationship itself triggers the protections of the Sixth Amendment misconceives the underlying purposes of the right to counsel. The Sixth Amendment's intended function is not to wrap a protective cloak around the attorney-client relationship for its own sake any more than it is to protect a suspect from the consequences of his own candor. Its purpose, rather, is to assure that in any "criminal prosecutio[n]," U.S. Const., Amdt. 6, the accused shall not be left to his own devices in facing the "prosecutorial forces of organized society." *Maine v. Moulton,* 474 U.S. at [170], 106 S.Ct. at 484 (quoting *Kirby v. Illinois,* 406 U.S. at 689, 92 S.Ct. at 1882).

*Moran,* 106 S.Ct. at 1146. We hold, therefore, that Mr. Shiflet cannot, under these circumstances, successfully contend that his sixth amendment rights were violated.

In the case before us, there was no preferral of charges nor had adversary judicial proceedings been instituted against the appellant at the time of the attorney's disclosure.[4] The case was still under investigation. Consequently, the sixth amendment right to counsel was not applicable. *Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986); *United States ex rel. Shiflet v. Lane,* 815 F.2d 457 (7th Cir.1987).

Even if the appellant's right to counsel had attached, there is no meritorious issue. Almost assuredly, the evidence would have been discovered. Even if the evidence would not have been discovered, the appellant is not entitled to relief under any known precedent. This statement includes *United States ex rel. Shiflet v. Lane,* 625 F.Supp. 677 (N.D.Ill.1985) *rev'd,* 815 F.2d 457 (7th Cir.1987), upon which the majority relies for their reasoning and rationale. In that case, the District Court stated:

> Thus, in certain circumstances, the absence of an improperly motivated government intrusion combined with an extremely prejudicial disclosure may constitute a Sixth Amendment violation.

*But* in *Shiflet* there was a *deliberate, intentional,* disclosure by the defense counsel's investigator to the Government.

In our case, the civilian counsel's disclosure was *unintentional.*[5] Consequently, even the reasoning and rationale of the reversed case upon which the majority relies in *Shiflet* is inapplicable to our present case.

In the tug-of-war of trial advocacy there are bound to be "loose lips," at times, as defense counsel seek to serve their clients as best they can (even while at social events). But, in an adversary system, the "loose lips" of the *defense* should not be permitted to sink the *Government's* "ship."

I believe that the appellant's assignment of error on the second issue is also without merit.

I would affirm the findings and sentence as approved on review below.

---

4. At the time of the civilian attorney's inadvertent disclosure on November 19, 1986, *a stipulation of fact* stated that "the accused's squadron Commanding Officer had made no decision as to how to dispose of the charges and accordingly the GCM convening authority's only involvement concerned an awareness of the situation and giving advice to the command." Appellate Exhibit III. Charges were not preferred until six days *after* the disclosure.

5. *See* n. 2 of the principal opinion.