**UNITED STATES, Appellant,**

v.

**Chad R. ANKENY, Lieutenant, U.S. Navy, Appellee.**

No. 62,631.
NMCM 87 2629.

U.S. Court of Military Appeals.

March 30, 1990.

For the Accused: *Captain Dwight H. Sullivan, USMCR* (argued); *Lieutenant J. A. Toliver, JAGC, USNR* (on brief).

For the United States: *Lieutenant Colonel J. S. Uberman, USMC* (argued); *Lieutenant Colonel C. L. Salomon, USMCR, Commander Thomas W. Osborne, JAGC, USN, and Commander P. J. McLaughlin, JAGC, USN* (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

On January 14, 1987, the accused was tried by a military judge sitting alone as a

general court-martial at Naval Air Station Oceana, Virginia Beach, Virginia. Pursuant to his pleas, he was found guilty of two specifications of wrongful use of cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. Contrary to his pleas, he was found guilty of wrongfully soliciting a fellow officer to be derelict in his duties as a urinalysis officer,[1] in violation of Article 134, UCMJ, 10 USC § 934. The judge sentenced him to dismissal from the naval service, 6 months' confinement, total forfeitures, and a $2,000 fine. The convening authority approved the findings of guilty and the sentence but, in accordance with a pretrial agreement, he suspended all confinement for 2 years from the date of trial.

The Court of Military Review set aside the findings of guilty to the wrongful-solicitation offense and dismissed that charge and its specification. It also set aside the $2,000 fine, but affirmed the remaining findings of guilty and the remainder of the sentence. 28 MJ 780, 785 (1989). The Government's motion for reconsideration was denied by the Court of Military Review in April 1989.

The Judge Advocate General of the Navy, acting pursuant to Article 67(b)(2), UCMJ, 10 USC § 867(b)(2), certified the following issue for our review:

WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW WAS CORRECT IN HOLDING [THE ACCUSED'S] SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED BY HIS RETAINED ATTORNEY'S UNAUTHORIZED DISCLOSURE OF PRIVILEGED INFORMATION CONCERNING AN OFFENSE ABOUT WHICH THE GOVERNMENT HAD NO PRIOR KNOWLEDGE.

We conclude that the Court of Military Review properly reversed the findings of guilty for the undiscovered solicitation offense. Our particular holding, however, is that a conviction for this offense based on prosecution evidence not independent[2] of the unauthorized disclosure is barred on statutory and regulatory grounds. Mil.R. Evid. 410 and 511(b), Manual for Courts–Martial, United States, 1984. *See generally* Arts. 38(b) and 45, UCMJ, 10 USC §§ 838(b) and 845, respectively.

The facts upon which the above holding is based are drawn from the record of trial and are consistent with those found by the Court of Military Review. The accused tested positive for cocaine in two different urinalysis tests and pleaded guilty to two drug-use specifications at his court-martial. He was also charged with, but pleaded not guilty to, soliciting a fellow officer, the command urinalysis coordinator, to remove his urine sample and substitute another in its place. The certified issue concerns the latter offense only, and the parties stipulated to certain additional facts pertaining to it. That stipulation arose from several defense motions to suppress the prosecution's evidence of the solicitation offense because of violation of the attorney-client relationship and the Sixth Amendment.

This stipulation states:

In the early part of November 1986, LT Chad Ramsey Ankeny, USNR, formed an attorney-client relationship with Michael F. Fasanaro, Jr., a civilian attorney regarding charges of use of cocaine as evidenced by two positive urinalysis tests.

During the course of the professional relationship, LT Ankeny related to Michael Fasanaro information concerning a conversation LT Ankeny had with LTjg David R. Anderson, USN, the command urinalysis coordinator. The conversation occurred on or about 10 October 1986 and concerned a request by LT Ankeny to LTjg Anderson

---

1. The parties stipulated that Lieutenant jg (Junior Grade) Anderson was the officer responsible for collection and custody of urine specimens at the accused's unit, Fighter Squadron Thirty-Three.

2. *See generally United States v. Boyd,* 27 MJ 82 (CMA 1988); *United States v. Lucas,* 25 MJ 9 (CMA 1987), *cert. denied,* 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 764 (1988).

to permit LT Ankeny to submit a new urine sample to replace that sample collected by LTjg Anderson on 15 October 1986.

On 19 November 1986, Mr. Fasanaro attended a Judge Advocate social function in honor of Rear Admiral H.D. Campbell, Judge Advocate General of the Navy. During the course of the evening, Mr. Fasanaro engaged in conversation with LT David A. Wagner, JAGC, USNR, the assistant staff judge advocate for the General Court–Martial convening authority. At the time of this conversation the accused's squadron Commanding Officer had made no decision as to how to dispose of the charges and accordingly the GCM convening authority's only involvement concerned an awareness of the situation and giving advice to the command. *Mr. Fasanaro related to LT Wagner that LT Ankeny had called LTjg Anderson and wanted to substitute his 15 October sample with a new sample.* LT Wagner relayed the information to Commander William Drukker, JAGC, USN, the Staff Judge Advocate for the General Court–Martial Convening Authority, who in turn notified Commander C. W. Hoffman, then Commanding Officer of Fighter Squadron Thirty–Three, LT Ankeny's command. Neither CDR Hoffman nor CDR Drukker and LT Wagner were aware of any such conversations between LT Ankeny and LTjg Anderson.

At some time after 19 November 1986, CDR Hoffman approached LTjg Anderson to investigate the information he obtained from CDR Drukker. CDR Hoffman would not have approached LTjg Anderson but for the information received from CDR Drukker. CDR Hoffman did not mention any information he learned from CDR Drukker to LTjg Anderson. CDR Hoffman asked LTjg Anderson if there was "anything else" he wanted to tell him concerning LT Ankeny's case. At that point LTjg Anderson related the conversation between him and LT Ankeny. Charge II

and its supporting specification were then referred for trial.

(Emphasis added.) After considering this stipulation, the military judge denied the motions to suppress Lieutenant Anderson's testimony.

———

Our starting point in addressing the certified question is the majority opinion of the Court of Military Review. That court held that civilian counsel's disclosure to military authorities of information which led to the prosecution of his client for an unsuspected crime was ineffective assistance of counsel within the meaning of the Sixth Amendment. 28 MJ at 784. *See generally Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Scott,* 24 MJ 186 (CMA 1987). This holding was premised on two more particular legal conclusions. First, the accused's Sixth Amendment right to counsel arose prior to the challenged disclosure even though preferral of charges had not yet occurred. 28 MJ at 783–84. *See United States v. Jordan,* 29 MJ 177 (CMA 1989); *United States v. Wattenbarger,* 21 MJ 41, 43–44 (CMA 1985), *cert. denied,* 477 U.S. 904, 106 S.Ct. 3272, 91 L.Ed.2d 563 (1986); *see also Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986); *Maine v. Moulton,* 474 U.S. 159, 168, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985). *See generally United States ex rel. Shiflet v. Lane,* 815 F.2d 457 (7th Cir.1987), *cert. denied,* 485 U.S. 965, 108 S.Ct. 1234, 99 L.Ed.2d 433 (1988). Second, a violation of this constitutional right occurred even though the Government made no affirmative intrusion into the protected relationship between the attorney and his client. 28 MJ at 784. *See United States ex rel. Shiflet v. Lane,* 625 F.Supp. 677 (N.D.Ill.1985), *rev'd, supra,* 815 F.2d 457. 28 MJ at 782 n. 5. We need not decide these constitutional questions today because, regardless of their outcome, we conclude that the Uniform Code of Military Justice and the Military Rules of Evidence dictate reversal of this solicitation conviction. *See*

*generally Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 501, 105 S.Ct. 2794, 2800, 86 L.Ed.2d 394 (1985).

Our reliance on non-constitutional grounds to affirm the court below is premised on a close scrutiny of the particular facts of this case in light of applicable principles of military law. However, we generally agree with the observations of the court below that appellate approval of the proceedings in this case is not consistent with these principles. In particular, we find compelling the following words (28 MJ at 782–83) from Senior Judge Coughlin:

> We view the *McCluskey* [6 USCMA 545, 20 CMR 261 (1955)] Court's reversal as not resting on the judge advocate's conflict of interest, but rather on the principle that evidence developed as a consequence of a breach of the attorney-client relationship may not be used to convict the client. In absence of such a principle, the accused would be wronged in law but the law would provide no effective remedy. Even more important, the primary purpose behind the confidentiality of the attorney-client relationship would be defeated.[6] As stated in *United States v. Fair*, 2 USCMA 521, 10 CMR 19 (1953), the principle of confidentiality was "designed to encourage full and unrestrained communication between client and attorney." It exists "for the purpose of providing a client with assurances that he may disclose all relevant facts to his attorney safe from fear that his confidences will return to haunt him." *United States v. Turley*, 8 USCMA 262, 24 CMR 72 (1957), *citing United States v. Marrelli*, 4 USCMA 276, 15 CMR 276 (1954). *See also United States v. Green*, 5 USCMA 610, 18 CMR 234 (1955). Thus, a holding by this Court affirming the conviction based on evidence directly derived from an attorney's breach of the attorney-client relationship would countermand the purpose behind protecting such confidences and could only serve to discourage clients from the free and full disclosure of facts. This consequence would be both abhorrent and contrary to the interests of justice. It would also fly

in the face of the "zealous" endeavors of the Court of Military Appeals to safeguard and strengthen the confidences of the client arising from the attorney-client relationship. *United States v. Turley*, [8 USCMA at 265,] 24 CMR at 75.

---

[6] The principle of confidentiality is given effect in both the attorney-client privilege and the rule of confidentiality. The attorney-client privilege is a rule of evidence that applies in judicial proceedings, while the rule of confidentiality is a mandate of professional ethics that applies even beyond the courtroom doors. The confidentiality rule covers all information relating to the representation from whatever the source, not merely to matters communicated in confidence by the client and prohibits the disclosure of such information except as authorized or required by the Rules of Professional Conduct or other law. ABA Model Rules of Professional Conduct, Rule 1.6, Comment (5).

Nevertheless, we disagree with this judge's later suggestions that these same military legal principles are hortatory in effect and that a military accused must necessarily invoke his constitutional rights to secure an effective remedy in this situation. *See generally Unger v. Ziemniak*, 27 MJ 349, 354 (CMA 1989).

■ Our first reason for reaching this conclusion is recognition of the fact that the accused and his first civilian counsel formed an attorney-client relationship during the early stages of a military criminal investigation. RCM 303, Manual, *supra*. The formation of such a relationship prior to preferral of military charges is neither unusual nor unauthorized. Art. 38(b). *See United States v. McCluskey*, 6 USCMA 545, 20 CMR 261 (1955); *United States v. Marrelli*, 4 USCMA 276, 15 CMR 276 (1954). Moreover, once this Code-recognized relationship was established, the attorney-client privilege fully applied. *See United States v. Catt*, 1 MJ 41, 46 (CMA 1975). Accordingly, regardless of the date of preferral of charges against him, some protection under military law was available to him. *See United States v. Newak*, 24 MJ 238, 241 n. 3 (CMA 1987) (opinion of Everett, C.J.); *United States v. Wattenbarger*, 21 MJ at 43. *See generally* RCM 502(d)(6), Discussion (B).

▓ Our second reason is that the accused did make a confidential communication to his attorney when he admitted a crime which was not yet being investigated by military authorities. Mil.R.Evid. 502(b)(4). The crime of solicitation was part of a coverup directly related to the offenses of drug use which military authorities had reason to suspect the accused committed. In this situation the only reasonable inference we can draw is that the accused sought his civilian counsel's representation on this military offense as well. Accordingly, regardless of the date of the discovery of this crime by military authorities, the accused's admission to his lawyer was within the scope of the military's attorney-client privilege. Mil.R.Evid. 502(a).

▓ Third reason for our military-law tack is that civilian counsel's conversation with the assistant staff judge advocate at the social affair was part of his legal representation of the accused. Art. 38(b). RCM 502(d)(6) states: "Defense counsel shall represent the accused *in matters* under the code and these rules *arising from the offenses* of which the accused is *then suspected or charged.*" (Emphasis added.) This conversation was with a military lawyer for the convening authority who had been notified of the accused's positive urinalyses and who ultimately referred the charges against the accused to a court-martial. *See* RCM 306(c)(4) and 601. The conversation directly concerned the accused and his possible prosecution for these drug offenses. The fact that the government lawyer involved was an assistant staff judge advocate and not the senior legal adviser to the commander does not detract from the officiality of this encounter. *See generally United States v. Brown*, 13 MJ 253 (CMA 1982); *Cooke v. Orser*, 12 MJ 335, 339–40 (CMA 1982). In this light, the

unstructured nature of the encounter between the lawyers cannot be said to remove this case from Code and Manual coverage.

Admittedly, our military-law approach confronts problems as a result of the somewhat circumspect stipulation of fact in this case. For example, the stipulation does not expressly state that the civilian counsel told the command's lawyer that his client admitted the solicitation offense to him. More importantly, this stipulation does not expressly state the purpose for which civilian counsel made the disclosure, whatever its precise form.[3] Despite these gaps in the record, both the military judge and the Court of Military Review expressly recognized the existence of an attorney-client relationship at the time of the disclosure. Moreover, the almost complete submersion of the facts of this case within the military justice system and its legal community further suggests that the Code and Manual must provide effective recourse in this situation. Accordingly, it is to these sources we should first turn.

## A

▓ Our first impression of this case is that it involves an impliedly authorized disclosure by defense counsel which is protected by Mil.R.Evid. 410. *See generally* 8 Wigmore, *Evidence* § 2325(1) (McNaughton rev. 1961). This military rule states:

Rule 410. Inadmissibility of pleas, plea discussions, and related statements

(a) *In general.* Except as otherwise provided in this rule, *evidence of the following is not admissible in any court-martial proceeding against the accused* who made the plea or was a participant in the plea discussions:

(1) a plea of guilty which was later withdrawn;

---

**3.** Neither the judge nor the majority of the Court of Military Review made a specific finding of fact concerning civilian counsel's purpose in his disclosure. *See generally United States v. Lowry*, 2 MJ 55, 58–59 (CMA 1976). The majority of the appellate court below did "presume ... that his breach of the attorney-client relationship was unintentional." *United States v. Ank-*

*eny,* 28 MJ 780, 781 n. 2 (NMCMR 1989). Such a presumption is not a finding of fact, but a mixed assumption of law and fact. In any event, it is not inconsistent with resolution of this case on the basis that civilian counsel purposely made this disclosure but intended no breach of the attorney-client privilege.

(2) a plea of nolo contendere;

(3) any statement made in the course of any judicial inquiry regarding either of the foregoing pleas; or

(4) *any statement made in the course of plea discussions with the convening authority, staff judge advocate, trial counsel or other counsel for the Government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.*

(Emphasis added.) Recently we applied this rule in *United States v. Brabant*, 29 MJ 259, 264 (CMA 1989), to an apparent pre-preferral conversation between an accused and his commanding officer. Earlier, in *United States v. Barunas*, 23 MJ 71 (CMA 1986), we applied it to a post-preferral letter from an accused, who at the time was represented by counsel, to his commanding officer.

In the instant case the statement in question was made by the accused's lawyer and was pertinent to his legal representation of the accused on anticipated criminal charges. *See generally United States v. Grant*, 622 F.2d 308, 312 (8th Cir.1980). Moreover, it was addressed to an assistant staff judge advocate who worked for the command which would prosecute the accused for these charges and who did not object to this conversation. *Cf. United States v. Porter*, 821 F.2d 968, 977 (4th Cir.1987), *cert. denied*, 485 U.S. 934, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988); *United States v. Sebetich*, 776 F.2d 412, 421–22 (3d Cir.1985), *cert. denied*, 484 U.S. 1017, 108 S.Ct. 725, 98 L.Ed.2d 673 (1988). Finally, guilty pleas on the connected drug charges were entered in this case pursuant to a plea agreement with that command. Accordingly, we conclude that these preliminary overtures by defense counsel toward the Government should also be considered as a related "statement made in the course of plea discussions" for the purpose of this rule. *See United States v. Serna*, 799 F.2d 842, 848–49 (2d Cir.1986), *cert. denied*, 481 U.S. 1013, 107 S.Ct. 1887, 95 L.Ed.2d 494 (1987); *cf. United States v. Leon Guerrero*, 847 F.2d 1363, 1367–68 (9th Cir.1988).

Of course, a stumbling block to application of this rule in the present case is that the prosecution at trial may not have literally introduced evidence of "any statement made" by the accused's lawyer or the command lawyer during their discussion of the case. Instead, it introduced the testimony of Lieutenant Anderson whose name was identified by the accused's counsel during this discussion as the subject of the undiscovered solicitation offense. One Court of Appeals has expressed some reservations about applying Fed.R.Evid. 410, the civilian counterpart to Mil.R.Evid. 410, in a similar context, but stopped short of such a holding. *See United States v. Magee*, 821 F.2d 234, 242–43 (5th Cir.1987); *see also* D. Louisell & C. Mueller, *Federal Evidence* § 187 at 91 (pocket part 1989).

We find such a view counter to our avowed intent to avoid "[a]n excessively formalistic or technical approach to this rule" and Article 45. *See United States v. Barunas, supra* at 76. In fact, our practice has been to broadly construe this rule so as to encourage plea negotiations and secure the concomitant benefits for the military justice system. *Id.* at 75–76. Accordingly, we hold that the military judge plainly erred in letting the prosecution witness, disclosed only in defense counsel's statement, testify in this case. *See generally Bishop v. Rose*, 701 F.2d 1150, 1157 (6th Cir.1983).

**B**

■ A second reason for affirming the decision of the Court of Military Review is the accused's privilege under military law to prevent the unauthorized disclosure of his confidential communications to his attorney. Mil.R.Evid. 502(a) states:

(a) *General rule of privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client,* (1) *between the client or the client's representative and the lawyer or the lawyer's representative,* (2)

between the lawyer and the lawyer's representative, (3) by the client or the client's lawyer to a lawyer representing another in a matter of common interest, (4) between representatives of the client or between the client and a representative of the client, or (5) between lawyers representing the client.

(Emphasis added.) The Court of Military Review recognized the plain applicability of this privilege in the present case but eschewed resolution on this legal basis. *Cf. United States v. Bump*, 605 F.2d 548, 551 (10th Cir.1979). It concluded that the standard exclusionary rule provided in Mil.R. Evid. 511(a) was not broad enough to preclude testimony by Lieutenant Anderson. *See Hickman v. Taylor*, 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947); *see generally McCormick on Evidence* § 96 at 237 (E. Cleary 3d ed.1984). The court below said:

Although the unauthorized disclosure by the civilian attorney clearly falls within Mil.R.Evid. 511(a), neither the civilian attorney nor any of the Government officials to whom the confidential matter was communicated testified at trial. Accordingly, Mil.R.Evid. 511(a) was not violated. Nor are we willing to extend the exclusionary rule of Mil.R.Evid. 511(a) via the fruit of the poisonous tree doctrine so as to artificially create a basis for the dismissal of the charge.

28 MJ at 783 n.7. We disagree to the extent that the court below suggests this Manual rule of evidence can be read in a way to ignore or erode the statutory right to counsel established in Article 38(b) and our case law applying it. *See generally United States v. Mance*, 26 MJ 244 (CMA), *cert. denied*, 488 U.S. 942, 109 S.Ct. 367, 102 L.Ed.2d 356 (1988); *United States v. Lee*, 25 MJ 457, 460 (CMA 1988).

Mil.R.Evid. 511(a) states:

Rule 511. Privileged matter disclosed under compulsion or without opportunity to claim privilege

(a) *Evidence of a statement or other disclosure* of privileged matter *is not admissible* against the holder of the privilege if disclosure was compelled erroneously or was made without an opportunity for the holder of the privilege to claim the privilege.

(Emphasis added.) Its evidentiary predecessor, paragraph 151*a*, Manual for Courts–Martial, United States, 1969 (Revised Edition), stated that "evidence of such a communication should not be received unless it appears that the privilege has been waived by the person or government entitled to the benefit of it or that the evidence comes from a person or source not bound by the privilege."

However, neither rule particularly addresses the problem of evidence of a crime secured by the Government as a result of the unauthorized disclosure. Moreover, we have interpreted both these rules in light of Article 38 to prevent the use "in any way" of an improperly divulged communication and, on this point, we ally ourselves with comparative Sixth Amendment precedent from the Supreme Court. *United States v. Brooks*, 2 MJ 102, 105–06 (CMA 1977); *see United States v. Newak*, 24 MJ at 244; *United States v. Payton*, 23 MJ 379, 381 (CMA 1987); *Bishop v. Rose*, 701 F.2d at 1156–57. *See generally Weatherford v. Bursey*, 429 U.S. 545, 552, 97 S.Ct. 837, 842, 51 L.Ed.2d 30 (1977). Accordingly, in the absence of congressional repudiation of our past decisions and a resulting change in the Manual, we must reject the restrictive construction of Mil.R.Evid. 511(a) by the court below.

The above resolution of the certified issue on nonconstitutional grounds indicates our well-established view that the individual military rules of evidence should not be applied in a vacuum so as to abrogate important Codal concerns. Such a position is legislatively mandated by Article 36, UCMJ, 10 USC § 836, the Codal authority for the President's promulgation of these rules.[4] Also, Mil.R.Evid. 102 specifically

---

4. Article 36 states:

(a) Pretrial, trial, and post-trial procedures, including *modes of proof, for cases arising*

reminds us that the President, in enacting these rules of evidence, was fully cognizant of such superceding interests. That rule states:

Rule 102. Purpose and Construction

These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined.

In this light, we believe that both Mil.R. Evid. 410 and 511 must also be construed in light of the military accused's right to legal representation by civilian counsel. Art. 38(b)(2). Such representation can provide, *inter alia,* an important safeguard against command influence and should be encouraged. *See generally Soriano v. Hosken,* 9 MJ 221, 229 (CMA 1980) (Cook, J., dissenting); *United States v. Miller,* 7 USCMA 23, 28, 21 CMR 149, 154 (1956); H. Moyer, *Justice and the Military* §§ 3–188 and 3–340 (1972). Accordingly, we hold that application of either of these Military Rules of Evidence in a manner which unreasonably discourages such counsel's active and open participation in the military justice system thwarts controlling congressional and presidential evidentiary policy.[5]

*under this chapter triable in courts-martial,* military commissions and other military tribunals, and procedures for courts of inquiry, *may be prescribed by the President by regulations* which shall, so far as he considers practicable, apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts, but *which may not be contrary to or inconsistent with this chapter.*
(b) All rules and regulations made under this article shall be uniform insofar as practicable and shall be reported to Congress.
(Emphasis added.)

In conclusion, we are mindful of the important concern raised by Chief Judge Byrne in his partial dissent below. In particular, he cogently observed:

In the tug-of-war of trial advocacy there are bound to be "loose lips," at times, as defense counsel seek to serve their clients as best they can (even while at social events). But, in an adversary system, the "loose lips" of the *defense* should not be permitted to sink the *Government*'s "ship."

28 MJ at 788. However, the specific facts of this case do not suggest a Machiavellian effort by civilian counsel to engineer a breach of the attorney-client relationship for the purpose of preventing his client's prosecution. *See* Mil.R.Evid. 510(a). Moreover, we seriously doubt that Congress and the President intended the military justice system to simply stand by when a military accused's "ship" is accidentally scuttled by its captain in the lull before battle.[6]

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Chief Judge EVERETT and Judge COX concur.

5. The fact that civilian counsel was a retired Navy judge advocate does not alter our view on this point.

6. Civilian courts have taken varying positions on the inadvertent-disclosure problem. *See KL Group v. Case, Kay & Lynch,* 829 F.2d 909, 919 (9th Cir.1987); *United States v. Zolin,* 809 F.2d 1411, 1417 (9th Cir.1987), *rev'd on other grounds,* — U.S. —, —, 109 S.Ct. 2619, 2626, 105 L.Ed.2d 469 (1989); *cf. In Re Sealed Case,* 877 F.2d 976, 980 (D.C.Cir.1989). *See generally* 8 Wigmore, *Evidence* §§ 2325–26 (McNaughton rev.1961).