Willie W. **NICKEL**, Petitioner,

v.

Robert **HANNIGAN**, et al., Respondents.

Civ. A. No. 93–3024–DES.

United States District Court, D. Kansas.

Nov. 10, 1994.

**876**

David J. Gottlieb, University of Kansas School of Law, Lawrence, KS, for petitioner and Willie W. Nickel, pro se.

Melanie S. Pfeifer and Kyle G. Smith, Kansas Bureau of Investigation, Topeka, KS, for respondents.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner, an inmate at the El Dorado Correctional Facility, El Dorado, Kansas, was convicted of first degree murder on January 21, 1981, and was sentenced to life imprisonment. The Kansas Supreme Court affirmed petitioner's conviction and sentence on January 15, 1982.

In this action, petitioner challenges his conviction and claims he was denied the effective assistance of counsel when his attorney from prior occasions divulged confidential information to law enforcement officers which led directly to petitioner's arrest and conviction. Petitioner claims his attorney violated the attorney-client privilege. Additionally, petitioner claims his trial counsel failed to object to the testimony of his prior attorney at trial which also violated his constitutional right to the effective assistance of counsel.

On August 24, 1994, this court conducted an evidentiary hearing. Having reviewed the record in this matter, heard testimony during the evidentiary hearing, and read the post-hearing briefs, the court makes the following findings and order.

## FACTUAL AND PROCEDURAL BACK-GROUND

In 1980, petitioner lived in a house in Salina, Kansas, with several other individuals. The individuals worked for Joe Wuest ("Wuest") in his custodial service or held other odd jobs around town. Wuest apparently did not pay the individuals, but provided them with food and shelter. The record indicates that most of the individuals were in someway disadvantaged and that Wuest capitalized on their handicaps to keep his business endeavors afloat. Wuest apparently controlled the lives of petitioner and the others and insured that they were dependent upon him.

In June 1980, petitioner had an argument with Wuest because petitioner had fallen asleep on the job. Petitioner was afraid he would lose his job and sought advice from Dan Boyer ("Boyer"), an attorney who had represented petitioner on a number of occasions.

Petitioner went to Boyer's office in the early morning hours and told Boyer that he was worried that he would lose his job. He also told Boyer that he had been unable to concentrate since Wanda Kuhlman ("Kuhlman") disappeared in April 1980. Kuhlman, too, lived at the house, worked for Wuest and was the mother of Wuest's child. During further conversation, Boyer said he would talk to Wuest later in the day about petitioner retaining his job. Petitioner then told Boyer that no one would ever find Kuhlman's body because he had killed her with a sledgehammer and buried her beneath a boardwalk at the house.

Boyer questioned petitioner and then told him to go find Wuest and bring him to the office so the three of them could talk. Petitioner returned with Wuest and the three discussed whether petitioner had killed Kuhlman, whether Wuest knew about the murder and where the body might be. Boyer told Wuest to take petitioner and find out whether the body was indeed where petitioner indicated.

As soon as petitioner and Wuest left the office, Boyer called the Salina Police Department, told them of a possible homicide and that petitioner was the perpetrator of the crime. Boyer then called Wuest and told him to take petitioner to the police station. Petitioner was interviewed and confessed to the crime. After this admission a woman named Sheri Backer called the interviewing officer and informed him that petitioner's attorney wished all questioning to cease until he could be present.

Petitioner was eventually represented at trial by Public Defender, William Mize. Boyer testified against petitioner at trial as did the interviewing officer and a female resident of Wuest's house.

Following his conviction, petitioner appealed to the Kansas Supreme Court which affirmed his conviction.

In 1990 petitioner filed a motion pursuant to K.S.A. 60–1507 claiming that his trial counsel provided ineffective assistance of counsel. After post-conviction counsel was appointed, a second petition alleged that Boyer provided petitioner with ineffective assistance of counsel when he reported the privileged information to the Salina police. The second petition also alleged that Mize provided ineffective assistance when he failed to object to Boyer's trial testimony and when he failed to challenge the voluntariness of petitioner's confession because of petitioner's history of mental infirmities.

The state district court dismissed the 1507 petition without an evidentiary hearing finding that the communication between Boyer and petitioner was not privileged because Wuest was present. The court also found that petitioner's mental condition did not affect the voluntariness of his confession.

On appeal, the Kansas Court of Appeals found that the state trial court did not err when it found an evidentiary hearing was not necessary —— Kan.App.2d ——, 831 P.2d 1344. The appellate court found that petitioner had waived the attorney-client privilege when he chose to communicate with Boyer in the presence of Wuest. The court also found that Mize did not provide ineffective assistance of counsel by failing to object to Boyer's trial testimony because the privilege had been waived.

Concerning the voluntariness of the confession, the appellate court found that Mize could have concluded from written reports that petitioner's mental capacity did not prevent him from understanding the proceedings and his right to remain silent. The court of appeals concluded that even if the confession had been suppressed, the other evidence against petitioner was sufficient to support the conviction.

The Kansas Supreme Court denied petitioner's petition for review on July 8, 1992.

Petitioner commenced this action on January 15, 1993. On April 12, 1993, the state filed its answer and return which included a

motion to dismiss pursuant to Rule 9(a). The state claimed it had been prejudiced in its ability to respond to the petition because petitioner had unnecessarily and unreasonably delayed in filing the petition. By memorandum and order of July 5, 1994, this court declined to grant the motion and set an evidentiary hearing on the matter.

On August 25, 1994, the court heard oral testimony and argument on the substantive issues. Closing briefs were subsequently filed and the court has reviewed the record.

## DISCUSSION

At the outset, the court notes that the facts and circumstances surrounding this case are troublesome. There appears to have been several lapses in judgment and inattention to detail. However, the court does not reach the conclusion that petitioner's constitutional rights were violated to the extent necessary to grant the petition for writ of habeas corpus. That petitioner was ill-served at points in the proceedings is apparent; that the attorney's conduct was such as would violate petitioner's Sixth Amendment right to the assistance of counsel thereby resulting in a different outcome is less clear.

To establish a claim of ineffective assistance of counsel one must show: (1) that petitioner did not receive the counsel guaranteed by the Sixth Amendment; and (2) that counsel's performance was so deficient that the defendant did not receive a fair trial. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defendant bears the burden to establish both incompetence and prejudice. There is a presumption that the attorney's conduct comes within "the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065.

Petitioner claims that he was denied the effective assistance of counsel when Boyer divulged his confidential information to the police department. In addition, he asserts that Mize failed to object to Boyer's testimony at trial which also resulted in the denial of effective assistance of counsel.

■ The Sixth Amendment right to counsel attaches only at or after the initiation of adversary judicial proceedings against the defendant. *United States v. Gouveia*, 467 U.S. 180, 187, 104 S.Ct. 2292, 2296–97, 81 L.Ed.2d 146 (1984). The right attaches only when the government's role turns from investigative in nature to adversarial in nature. A defendant simply cannot prevail on an ineffective assistance of counsel claim when the constitutional right to counsel has not attached. *Wainwright v. Torna*, 455 U.S. 586, 587–88, 102 S.Ct. 1300, 1301–02, 71 L.Ed.2d 475 (1982). Furthermore, the protections of the Sixth Amendment right to counsel are not triggered by the mere existence of an attorney-client relationship, but rather by the initiation of adversarial judicial proceedings. *Maine v. Moulton*, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985).

At first blush, this would seem to automatically squelch petitioner's Sixth Amendment claim, because the record is clear that no judicial proceedings has been initiated against petitioner at the time he spoke to Boyer. It cannot be overlooked, however, that the adversarial judicial proceedings against petitioner began only as a result of Boyer's call to the police.

In *U.S. v. Ankeny*, 30 M.J. 10 (CMA 1990), the United States Military Court of Appeals ("CMA") affirmed the United States Navy-Marine Corps Court of Military Review's ("NMCMR") reversal of defendant's conviction. The court held that when civilian counsel disclosed to military authorities information which led to the prosecution of the defendant for an unsuspected crime, counsel had violated defendant's right to the effective assistance of counsel within the meaning of the Sixth Amendment. *U.S. v. Ankeny*, 28 M.J. 780, 783–84 (NMCMR 1989). The NMCMR found that even though charges had not been preferred against the defendant, the government's investigation had moved toward the adversarial stage. Defendant was, in fact, the target of forthcoming proceedings based on the two positive urinalysis tests in the government's possession. *Id.* The court further found that, but for defense counsel's disclosure to the authorities, it is unlikely that the crime would have been discovered. *Id.* at 784.

*Ankeny* is factually distinguishable from the case before this court. In that case there

was a clear on-going attorney-client relationship between defendant and his counsel throughout the investigation and well before any charges were preferred.

■ In the case before this court, although the Kansas Court of Appeals found an attorney-client relationship existed between Nickel and Boyer, the evidence of such a relationship is far less conclusive. Boyer testified before this court that he never considered himself petitioner's attorney during the early morning conversation. He further testified that petitioner, who had come to him because he was afraid he would lose his job with Joe Wuest, only blurted out the information about the murder as an afterthought. Although this factor, is not dispositive of whether a relationship existed, it is certainly indicative that the intent of parties was quite different. The court of appeals further found that Nickel had waived the privilege of confidentiality when Joe Wuest was present during petitioner's second conversation with Boyer.

This court need not address the attorney-client privilege because it finds that the Sixth Amendment right to counsel had not attached and Boyer could not, therefore, render ineffective assistance of counsel. A defendant must have a right to counsel before relief can be obtained for the ineffective assistance of counsel. *U.S. v. Gordon,* 4 F.3d 1567, 1572 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1236, 127 L.Ed.2d 579 (1994).

This by no means implies that the court approves of Boyer's handling of petitioner's disclosure to him. What it does mean is that for purposes of analysis under the Sixth Amendment, there can be no constitutional violation because the constitutional right to counsel had not attached.

Petitioner's second claim is that he was denied the effective assistance of counsel when trial counsel Mize failed to object at trial to Boyer's testimony. Mize had objected during the preliminary hearing, but did not renew that objection at trial.

■ Petitioner correctly points out that the law in Kansas requires a contemporaneous objection at trial to preserve an issue on appeal. *State v. Johnson,* 255 Kan. 252, 874 P.2d 623 (1994). However, in federal habeas corpus proceedings mere trial errors, such as failure to object, do not rise to the level of constitutional error. Mere failure to object to evidence does not render an attorney ineffective. *Yarrington v. Davis,* 992 F.2d 1077, 1080 (10th Cir.1993).

A failure to object may well be trial strategy. *Strickland, supra,* 466 U.S. at 689, 104 S.Ct. at 2065. It is assumed that counsel's actions are usually based on strategic choices. *Id.* Here Mize testified that since he believed the court's ruling at the preliminary hearing was correct and believed it was in the best interests of the client to go forward with the testimony available to him, he made the decision to proceed without objection.

The court, on review must consider the totality of the evidence presented to the trial court and determine whether there is a reasonable probability that, but for the error, the outcome of the case would have been different. *Id.*

After careful review, the court concludes that the totality of the evidence against petitioner was such that Mize's failure to object did not render the outcome constitutionally infirm.

The court once again notes that the handling of this matter was less than one might expect. However, the constitution does not guarantee a perfect trial, merely one that produces fundamental fairness. The court believes Mr. Nickel received such a trial.

**IT IS THEREFORE BY THE COURT ORDERED** that the petition for writ of habeas corpus is dismissed and all relief denied.